General Contract Purchase Corporation, Appellant,
*v.* Bitomski.

Argued March 3, 1931.

Before TREXLER, P. J.,
KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and
DREW, JJ.

*Joseph F. Gunster,* for appellant.

*Frank E. Donnelly,* and with him *Charles B. Little,* for appellee.

OPINION BY LINN, J., April 15, 1931:

Plaintiff has judgment for $629.00 in replevin, and, on this appeal contends that it should have received $1980.00 more; that additional amount was disallowed by the learned court below, trying the case without a jury on the ground that appellee had a lien in that sum on the goods involved: section 6, Replevin Act, 1901, P. L. 88. At the trial, part of the evidence was documentary, part was given by three witnesses and part was put in as admissions by agreement of counsel. The trial judge made findings of fact and conclusions of law, and held that as to $1,980 the plaintiff was precluded from recovery by estoppel arising out of the delivery to Bitomski (a defendant who did not appear in the trial) of a receipted invoice, on the faith of which, appellee made a loan to him secured by pledge of the goods. We find no reason to differ from the finding of estoppel, but we have also concluded that there was no conditional sale such as plaintiff relied on. Our judgment in this respect is based on consideration of elements of decisive nature disclosed by the record, apparently not considered by the court below, and requiring a conclusion, in a measure, perhaps inconsistent with some of the conclusions reached below; but it is well settled that on appeal from a trial of an action at law without a jury, the appellate court may consider elements not considered

below and make its own findings; Commercial M. Co. etc. v. Waters, 280 Pa. 177, 180 and cases there cited.

Plaintiff brought replevin for 30 washing machines, part of a lot of 70, identified by separate numbers, for which Yager & Sons, Inc., at Binghamton, N. Y., issued its invoice dated September 13, 1926, reciting that they were "sold to [one Bitomski, trading as] Penn Research Laboratories," of Scranton, Pa., and that "all goods [were] sold f. o. b., point of shipment . . . . . ." It specified that a sight draft was attached to an order bill of lading for the goods.

The seller, Yager & Sons, Inc., was not made a party to this suit; the plaintiff is General Contract Purchase Corporation. In plaintiff's office, apparently in Scranton, on September 22, 1926, Frank Bitomski, trading as Penn Research Laboratories, executed a document concerning the washing machines; it was prepared on a printed conditional sales contract form of the plaintiff, in which details such as description of the property, quantity, price, serial numbers etc., were inserted in typewriting in blanks left in the form for that purpose. It was signed only by Bitomski, trading as Penn Research Laboratories. It begins: "Received from W. H. Yager & Sons, Inc., Binghamton, N. Y., hereinafter referred to as the Seller—Bill of Lading covering shipment to me, (us), of the following described devices"; then follows a description of the washing machines purchased. It contained a provision that Bitomski should "pay to the Seller or order, as follows: $1662.50 (Not less than 25%) by Sight Draft attached to Bill of Lading and the balance, plus a service charge amounting to $2.00 on each device as above listed, to be represented by a note bearing date above written, and payable to the Seller or order on or before ninety days after date. I (we) also agree to pay any and all reasonable and proper costs, expenses and attorneys' fees which Seller may at any time incur by

reason or through my (our) default and the enforcement of Seller's rights under this contract."

Those provisions are, of course, entirely inconsistent with the terms of purchase and sale described in the invoice which states a sale of the same property to Bitomski for $6,650 cash, on payment of which, without any service charge, he should receive the order bill of lading, which represented the goods, and which must be surrendered to the carrier to obtain possession. While, of course, Yager & Sons, Inc., and Bitomski might have agreed to modification of the original purchase and sale, there is no evidence that they did so, or that Yager & Sons, Inc., ever heard of this document before September 23, when it is said to have made an oral assignment of it, although on that day Yager & Sons, Inc., had already been paid in full. The contract also reserved title in the seller until the machines were paid for, but, with the right, in Bitomski, in the ordinary course of business, to sell the machines at retail; in which event, if sold for cash, to remit the balance of the wholesale price on each machine to the plaintiff on account, and if sold on credit, to evidence the sale by a suitable deferred payment contract to be executed by the retail purchaser reserving the title in Bitomski until the purchase price was paid, with the right in plaintiff to purchase the contract so made; as to such provisions, see section 9 of the Uniform Conditional Sales Act of May 12, 1925, P. L. 603. This contract was filed in the office of the prothonotary of Lackawanna County on September 28, 1926. The court found as the result of an admission of counsel for plaintiff and appellee, that on September 23, 1926, Yager & Sons, Inc., made an oral assignment of the contract to the plaintiff for $4987.50; no written assignment was made until after this suit was brought in 1927, when an assignment, dated September 23, 1926, was written on the back of the contract.

The sight draft for $6,650 drawn by Yager & Sons,

Inc., and the order bill of lading, together with the invoice, were sent to the Anthracite Trust Company of Scranton to obtain payment of the draft and to make delivery of the bill of lading. An officer of the trust company testified that, pursuant to a letter from plaintiff, "giving certain directions with reference to this matter," he conducted the transaction for the trust company; that cash in the amount of $6,650 was paid to it, and by it was remitted to Yager & Sons, Inc., in payment of the invoice; the letter of instructions was not put in evidence. Of that sum paid to the trust company, he said, Bitomski paid part, and plaintiff the balance, $4987.50. Pursuant to his instructions, upon receiving such payment, he delivered to Bitomski the bill of lading and the invoice referred to, after stamping the invoice as follows: "Anthracite Trust Company, Scranton, Pa. Paid September 22, 1926."

On September 22d, plaintiff loaned to Bitomski the sum of $4987.25 taking his 90 day note therefore.

On November 30, 1926, thirty of these machines were delivered by Bitomski to defendant warehouse company, as security for a loan of $1,985 then made by defendant to Bitomski; this loan was made on the faith of the receipted invoice showing that the purchase price had been paid, and the amount borrowed, less defendant's charges, was paid by Bitomski to the plaintiff on account of his indebtedness to plaintiff, though plaintiff did not know from whom or how Bitomski obtained the money.

On February 4, 1927, Bitomski being in default, plaintiff caused a writ of replevin to issue against him and the Quackenbush Warehouse Company, the appellee, for the washing machines pledged to the warehouse company; that company filed a counter-bond and retained the machines; pleadings and trial followed with the result stated above.

We turn now to the consideration of the transaction as completed on September 22d, noting that it was the

day before the alleged oral assignment by Yager & Sons, Inc. No witness testified about the assignment; the fact gets into the record by the admission of counsel, subject to the qualification insisted on by defendant's counsel (as the record states) that as between the plaintiff and the appellee, the rights of the parties can be affected by it only from the day when the written assignment was made. We have already referred to the testimony of the officer of the trust company that the bill of lading and sight draft of $6,650, drawn by Yager & Sons, Inc., on Bitomski, passed through his hands, and that he received that sum of money for the purpose of remitting it to, Yager & Sons, Inc., and that he did remit it to them on that date, and then delivered the bill of lading to Bitomski to enable him to get the goods, and also delivered to him a receipted invoice showing the payment of the full purchase price. The only inference that can be made from that evidence is that the seller, Yager & Sons, Inc., was paid in full and that Bitomski was entitled to the absolute possession of the goods on September 22. There is no evidence that Yager & Sons, Inc., made, or intended to make, a conditional sale to Bitomski before September 23; it was then too late, because the seller had been paid in full in accordance with the terms of the sale stated in the invoice. The mere fact that on September 22, Bitomski, in the office of the plaintiff, executed on one of its forms what purported to be an acknowledgment that he purchased these goods from Yager & Sons, Inc., on the conditions stated in that paper, amounts to nothing as against the appellee in the circumstances shown. On that day, Yager & Sons, Inc., was paid in full and parted unconditionally with the shipment. Even if the execution of the conditional sales contract on September 22 be considered as the beginning of a transaction by Yager & Sons, Inc., and the plaintiff and Bitomski, having for its object the transfer to plaintiff of a lien which Yager & Sons, Inc.,

might, in other circumstances, have provided for itself by means of a conditional sale, which transaction was not completed until the alleged oral assignment made next day, defendant is not affected by it without actual notice; there is neither proof nor averment of such notice. We are therefore of opinion that the so called conditional sales contract conferred no rights on plaintiff superior to appellee's right to the security of the property pledged by Bitomski, see Bank v. Parks, 94 Pa. Superior Ct. 570, 571; Root Republic Acceptance Corp., 279 Pa. 55, 57; Hoeveler-Stutz Co. v. C. M. Sales, 92 Pa. Superior Ct. 425; Com. v. Williams, 93 Pa. Superior Ct. 92.

The learned court below held that the delivery to Bitomski of the invoice showing payment for the machines, (with the bill of lading which enabled him to obtain possession of them) and the subsequent exhibition by him of the receipted invoice to the warehouse company, as evidence that he had purchased the machines and had paid the full purchase price, and obtaining, on the faith of it, a loan from the warehouse company without actual notice of plaintiff's claim to an interest in the machines, estopped the plaintiff from asserting any prior right that it might otherwise have had; that appellee had a lien to the amount of its loan, which it could enforce in this action.

The court made the following finding of fact to which plaintiff did not except: "In September, 1926, the property was shipped by W. H. Yager & Sons, to Frank Bitomski, defendant, on sight draft with bill of lading attached, the draft and bill of lading being sent to the Anthracite Trust Company of Scranton. Upon payment by Frank Bitomski of six thousand six hundred and fifty dollars ($6,650) the invoice was stamped 'paid' by the said Anthracite Trust Company. The invoice stated that the bill of lading was attached and the said stamped invoice was turned over to the said Frank Bitomski." Plaintiff contends that the

receipted invoice should not have been received in evidence, asserting lack of evidence of authority in the trust company to mark it paid. The evidence of the trust company's clerk is undisputed that the invoice, and the sight draft and the bill of lading were sent to the trust company for collection; an agent authorized to collect is deemed to have authority to give a receipt for his collection, in the absence of evidence to the contrary: Hubbard v. Tenbrook, 124, Pa. 291, 296.

Did the delivery to Bitomski of the receipted invoice and the use made of it by him, in the circumstances stated, support the estoppel applied? "An estoppel may be said to arise when a person executes a deed, or is concerned in or does some act, either of record or in pais, which will preclude him from averring anything to the contrary": 10 R. C. L. p. 675; see, too, Fedas v. Ins. Co., 300 Pa. 555, 560; Atkins v. Payne, 190 Pa. 5, 200 Pa. 557; Ebert v. Johns, 206 Pa. 395; Sargent v. Johns, 206 Pa. 386; Com. v. Moltz, 10 Pa. 527, 530; Keefer v. Keefer, 9 Pa. Superior Ct. 53; 21 C. J. 1060. As Bitomski had possession of goods, accompanied with a receipt showing payment in full, we think the court below was justified in finding that plaintiff was precluded from setting up its title to the extent of defendant's lien.

Judgment affirmed.