Innes et al. *v.* Nanticoke City School District, Appellant.

Argued April 14, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Richard B. Sheridan,* with him *Peter Kanjorski,* for appellant.

*William S. McLean, 3rd,* for appellee.

OPINION BY MR. JUSTICE DREW, May 12, 1941:

Plaintiffs, partners doing business as architects, brought this suit to recover from defendant, School District of the City of Nanticoke, upon a contract wherein defendant engaged their services for the proposed construction of an addition to a high school building. Defendant answered that the contract was illegal because it created an excessive indebtedness in violation of the Constitution. A taxpayer of the District, having intervened as a party defendant, the case went to trial before the court without a jury. The result was a finding for plaintiffs in the sum of $13,297.94 upon which judgment was subsequently entered, the court en banc having dismissed defendant's exceptions thereto. This appeal by the School District followed.

A brief history of essential facts shows the following: Plaintiffs, prior to September 23, 1936, at the request of a director of the School District, prepared plans and cost estimates for a proposed addition to a high school building. At a meeting of the Board that day the following resolution was passed: "Upon the motion of Hill and Rees the firm of Innes and Levy were selected architects for the proposed building, with the direct understanding that if the building of this addition cannot be carried out that there shall be no expense to the school district. If the loan from the National Government and the sanction of the voters can be obtained for an additional bond issue, then the Board will enter into a contract with Innes and Levy, agreeing to pay them six per centum (6%) for their services as architects." Plaintiffs then completed the plans and details, and, carrying out their understanding with defendant, filed application on its behalf for a Public Works Administration grant from the federal government to finance the construction. This grant was approved on August 25, 1937, in the maximum amount of $168,678, conditioned upon the work being commenced by January 10, 1938. On September 28, 1936, the Board

adopted a resolution reciting the financial condition of the School District and requesting the electorate to authorize an increase of the indebtedness in the sum of $200,000 for the proposed construction, the consent of the voters being required by Article IX, section 8, of the Constitution of Pennsylvania, and the Act of April 20, 1874, P. L. 65, as amended, because the desired increase in indebtedness would exceed 2 per centum of the assessed valuation of the taxable property within the district. Although the proposal was approved by the voters at the general election on November 3, 1936, no action was ever taken by the School District under the authorization and no bonds were ever issued.

On October 4, 1937, at a meeting of the Board the PWA grant was accepted by the School District, as were the plans and specifications prepared by plaintiffs, revised since their original submission in 1936 because of increased costs of labor and materials. At the same meeting, the contract between plaintiffs and the School District was authorized, and $4,000 was paid plaintiffs on account for work already done. The formal contract was duly executed on October 9, 1937. It specified in detail the services to be performed, compensation therefor being fixed at 6 per centum of the cost of the building.

Subsequently, bids for the construction were submitted but no contracts were awarded, the School Board on January 13, 1938, having adopted a resolution rejecting all bids and waiving the PWA grant, on the ground that the expense would illegally increase the indebtedness of the School District. This action, alleged to constitute the breach of contract for which the present suit was brought, and specifically found by the court below to have been taken in good faith, was based on a computation of the costs which would be incurred, totalling $388,993.19, which was $25,356.83 in excess of $363,636.36, the contemplated available funds, which included all moneys to be derived from the au-

thorized bond issue and the PWA grant. The project was then totally abandoned.

Plaintiffs, despite the contingent nature of their employment as shown by the resolution of September 23, 1936,—"with the direct understanding that if the building of this addition cannot be carried out that there shall be no expense to the school district" now seek to recover the contract fees, less a credit for work not finished by them. The court below allowed recovery on this basis on the theory that the conditions of the tentative engagement of plaintiffs went solely to the approval of the increased indebtedness by the electorate and the success of the application for the PWA grant. The learned court further concluded that the contract, executed October 9, 1937, related back and was effective as of the date of the original resolution of September 23, 1936, and therefore was not illegal and void as incurring an indebtedness in excess of the 2 per centum limitation because there was no evidence of the financial condition of the School District on that date.

Whether or not the contingency expressed in the resolution was incorporated in the contract we need not decide, for it is apparent from an examination of the record that the learned court below fell into error in finding that the legal indebtedness of the School District had not been exceeded. On the contrary, the liability of the School District on plaintiffs'.contract alone would have exceeded the constitutional limitation. The learned court also erred in holding that the effective date of plaintiffs' contract was September 23, 1936. No action of a contractual nature was then taken, and express conditions were attached to that resolution authorizing plaintiffs' selection. Plaintiff Innes himself testified that he did not expect to be compensated unless the PWA grant was obtained and the electorate approved the proposed bond issue. Under these circumstances, the liability of the School District to plaintiffs, if any, could not arise before these conditions

obtained. The Board did not accept the federal grant until October 4, 1937, the same time at which it authorized the execution of plaintiffs' contract which was duly executed on October 9, 1937, the controlling date so far as the School District's financial condition is concerned.

Defendant introduced in evidence, over plaintiffs' objection solely to its materiality, a statement of the financial condition of the School District filed in the Court of Quarter Sessions of Luzerne County on October 8, 1937, pursuant to the Act of April 20, 1874, P. L. 65, section 2, as amended, the net indebtedness being computed on the basis prescribed by the Act of July 2, 1937, P. L. 2860. The occasion for this official statement was the funding of a temporary indebtedness previously incurred in the amount of $100,000. It showed the existing non-electoral net indebtedness to be $237,226.17 and the last preceding assessed valuation of taxable property to be $12,000,206.00. Two per centum of the latter figure is $240,004.12, leaving the District a then borrowing capacity of only $2,777.95. Plaintiffs in no way contradicted the correctness of the figures set forth in this statement. Manifestly, therefore, the contract provision for an architect's fee of approximately $20,000 (being 6 per centum of $336,632.32, which was the estimate used by the court below in determining the total construction costs), imposed a liability upon the School District in excess of its legal capacity to obligate itself. By its resolution of January 13, 1938, the Board in good faith, as the trial court found, rejected all bids and the federal grant, and refused to proceed with the project because the cost of completion would exceed by $25,356.83 all available funds and thereby result in an illegal increase of indebtedness. It cannot be gainsaid that the Board acted properly in the circumstances.

No serious pretense is made that plaintiffs' fee could have been paid out of current revenues. The budget

adopted by the Board of Directors on April 29, 1937, for the fiscal year commencing July 1, 1937, was admitted in evidence and made no provision therefor. Although there was testimony on behalf of plaintiffs that there was a sum of $18,000 hidden in the budget item for Instruction which could have been transferred by vote of the Board, the testimony of one James Hiscox, an auditor for a Taxpayers' Association, who was familiar with the finances of the defendant District, is convincing that there were, in fact, no funds provided for the purpose of paying the architects' fees during that school year. This conclusion is further supported by the Controller's Report for the same fiscal year, also received in evidence as filed in the office of the Prothonotary of Luzerne County, which showed a deficit of $28,965.51 at the end thereof and hence is persuasive that no current funds could have been available. The court below made no finding on this point, but on appeal from a trial without a jury the appellate court may consider elements not passed upon below and make its own findings thereon: *General Contract Purchase Corporation v. Bitomski*, 102 Pa. Superior Ct. 266.

We conclude, therefore, that plaintiffs' contract, alone and of itself, created an illegal increase in indebtedness and for that reason is void. As was observed by Mr. Justice STERN in denying recovery by a contractor in *Charleroi Lumber Co. v. Bentleyville Borough School District*, 334 Pa. 424, at p. 433: "Persons contracting with a governmental agency must, at their peril, know the extent of the power of its officers making the contract. If the validity of the contract depends upon the amount of the agency's permitted indebtedness, the contractor must ascertain its limitations in that regard: *O'Malley v. Olyphant Borough*, 198 Pa. 525, 533; *Kreusler v. McKees Rocks School District*, 256 Pa. 281; *Willis v. York County Directors of the Poor*, 284 Pa. 138, 143; *Jackson v. Conneautville Borough School District*, 280 Pa. 601, 606."

Plaintiffs rely upon *Sauer v. McKees Rocks School District*, 243 Pa. 294, and *Altman v. Uniontown School District*, 334 Pa. 336, as conclusive of their right to recover even if the proposed construction would have been illegal. These cases have no application here. In neither did the liability under the architects' contracts themselves exceed the debt limitation. It was expressly stated in the Sauer case, at p. 302: "It is not pretended that the plaintiff's contract offended the Constitution by creating a debt exceeding the constitutional limit." Again, in the Altman case, at p. 340, this Court said: "Defendant makes no claim that the liability for the services performed by Altman alone created a debt in excess of its constitutional limitation."

The judgment is reversed and here entered for defendant.