## Thompson, Appellant, *v.* Equitable Life Assurance Society of the United States.

Argued March 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused May 30, 1972.

*Samuel J. Goldstein,* for appellant.

*Richard C. Witt,* with him *Thomas Lewis Jones, Samuel P. Gerace,* and *Jones, Gregg, Creehan & Gerace,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, April 20, 1972:

Coster Thompson, Sr., contracted pulmonary tuberculosis some time in December of 1945. Although he

continued working at the Clairton Works of the United States Steel Corporation until April 26, 1946, his condition deteriorated rapidly from the inception of the disease. Because of the contagious nature of his illness, his wife, Lenora Thompson, appellant, was advised to live separately from her husband, which she did, although she visited him regularly until his death on January 16, 1947. Unbeknownst to Mrs. Thompson, at the time of her husband's death, she was the named beneficiary of two group insurance certificates, one for $2,000, which had been increased on March 1, 1946, to $3,000, and one for $1,000, issued by the Equitable Life Assurance Society, one of appellees, to her husband as an employee of the United States Steel Corporation, successor to Carnegie-Illinois Steel Corporation, another of the appellees.

In November of 1965, Mrs. Thompson, while going through her recently deceased mother's papers, discovered the two insurance certificates. She made inquiry at the steel company's mill office to determine whether the insurance policies were still in effect and was informed that they had expired. Shortly thereafter Mrs. Thompson brought suit on the policies.

At the nonjury trial of the case on October 2, 1969, there was no evidence produced to prove that the deceased was ever advised by appellees of the actual termination of his employment and his right to convert his group policies to individual policies of life insurance. Thus, the policies were in effect at the death of Mrs. Thompson's husband. Nevertheless, the trial court found that Mrs. Thompson's right to recover on the policies was barred by the six-year statute of limitations on contract actions in Pennsylvania, 12 P.S. §31, since she did not notify the insurance company until more than six years had elapsed after her husband's death. On appeal to the Superior Court, the decision

of the trial court was affirmed with Judge MONT-GOMERY filing a dissenting opinion in which Judges HOFFMAN and CERCONE joined. We granted allocatur, and now we reverse.

As the dissenters pointed out in the Superior Court, most jurisdictions follow the general rule that failure to bring suit within the time limit stated in the policy is excused where the beneficiary does not know of the existence of the policy until after the alleged time has expired; provided (1) he notifies the company at once after acquiring that knowledge, and (2) the lack of knowledge was without negligence or fault of the party seeking to be excused. 44 Am. Jur. 2d, §1915. Any other rule, which would forfeit a life insurance policy because the beneficiary had not given notice or brought suit within a certain period of time after the death of the insured, when the beneficiary did not know of the existence of the policy until after the prescribed period had expired and the beneficiary's ignorance was without negligence or fault would be unduly harsh. See the recent exhaustive annotation to *Clinard v. Security Life & Trust Co.*, 264 N.C. 247, 141 S.E. 2d 271 (1965), 28 A.L.R. 3d 286, entitled "Beneficiary's Ignorance of Existence of Life or Accident Policy as Excusing Failure to Give Notice, Make Proofs of Loss, or Bring Action Within Time Limited by Policy or Statute."

Although this rule was applied by the Court of Common Pleas of Fayette County, Pennsylvania, in *Maize v. Nationwide Mut. Ins. Co.*, 35 Pa. D. & C. 2d 576 (1964), there is language in the case of *Selden v. Met. Life Ins. Co.*, 354 Pa. 500, 47 A. 2d 687 (1946), which supports a contrary rule, particularly the court's reference to a "general principle that a person is not relieved from compliance with the express provisions of a contract merely because of ignorance of his rights or even of the very existence of the contract." At page

503. However, as Mr. Justice (later Chief Justice) Charles Alvin JONES pointed out in his dissenting opinion in *Selden,* in which opinion Mr. Justice PATTERSON joined, the statute of limitations only begins to run: " '. . . [F]rom the expiration of the time within which proof of loss is required by the policy.' That time, in cases such as the facts here reveal, is when the existence of the policy first becomes, or should have become, known to the one entitled to assert a claim under it. If that is after the . . . period prescribed by the policy, the beneficiary has yet a *reasonable* time after the discovery of the policy within which to file the required proof. Thus, the thing that may vary, for cause shown, is 'the expiration of the time within which proof of loss is required by the policy.' " (Emphasis in original.) At page 505.

The language to the contrary in the majority opinion in *Selden* is not an accurate statement of the law in Pennsylvania. See also *Unverzagt v. Prestera,* 339 Pa. 141, 144, 13 A. 2d 46 (1940), where our court recognized that in cases such as this, ". . . if it is impossible to give notice upon the exercise of due diligence, notice given within a reasonable time after it is possible to do so will suffice."

The real issue in this case, as it was in *Selden,* is whether the beneficiary's failure to discover the policies in her favor until after the statute of limitations had elapsed was excusable.

The dissenters in the Superior Court believed that this case should be remanded to the trial court for a determination of this issue. However, they reached this decision because the transcript of the trial court's proceedings was not filed with the Superior Court when this case was before that court. We are not faced with that situation. We have the transcript. In an appeal from a trial without a jury, we may consider

elements not passed upon below and make our own findings thereon. *Innes v. Nanticoke City Sch. Dist.,* 342 Pa. 433, 20 A. 2d 225 (1941).

Here, the record is clear. Because of his tubercular condition, the insured, appellant's late husband, was not living with appellant and their family during his final illness. According to appellant, Mr. Thompson never discussed any insurance policies with her. The appellant further testified that between the date of her husband's death on January 16, 1947, and her discovery of the old group certificates in the fall of 1965, she did not know of the existence of any insurance. Under such circumstances, her failure to discover the policies at an earlier time was excusable and her claim should not have been barred by the statute of limitations.

The orders of the Superior Court and judgments of the Court of Common Pleas of Allegheny County are reversed and judgments are here entered for appellant.

Mr. Chief Justice JONES dissents.