400 A.2d 186

**CANADA DRY BOTTLING CO. of Williamsport, Inc.,**

**v.**

**John L. MERTZ and International Artware Corp., Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1978.

Decided March 23, 1979.

Lester L. Greevy, Jr., Williamsport, for appellants.

Norman M. Lubin, Williamsport, for appellee.

Before CERCONE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from a judgment in a trespass action in the amount of $10,108.60.

On May 3, (or 4) 1973—the date is sometimes stated one way, sometimes the other—one John N. Jones was killed when the automobile he was driving collided with an automobile driven by appellant John L. Mertz. Jones was employed by appellee, and at the time of the accident was acting in the course of his employment. His widow presented a workmen's compensation claim, on behalf of herself and her five minor children, which appellee referred to its compensation carrier, Pennsylvania Manufacturers' Association Insurance Company. The compensation agreement is not of record; however, the testimony indicates that it was agreed that compensation should be paid as follows: up to August 11, 1989, at the rate of $100 a week; from August 12, 1989, through October 15, 1991, $90 a week; and from October 17, 1991, until the widow remarried or died, $76.50 a week. (The amount of the weekly payments was to decrease as the children became 18 years old.) (Record at 124a–125a)

In the meantime, the widow on behalf of herself and her children brought a wrongful death and survival action against appellant Mertz and his employer, appellant Interna-

tional Artware Corp. Her counsel negotiated a settlement for $125,000—$120,000 being alloted to the wrongful death action, and $5,000 to the survival action—and on April 24, 1974, the Court of Common Pleas of Luzerne County, in which the action had been filed, approved the settlement. (Record at 64a–69a) The petition for approval of the settlement is not as clear as it might be, but when read in the light of the testimony, it discloses the following facts. Pennsylvania Manufacturers' pro rata share of the counsel fee on the settlement was $37,500–$36,000 for the recovery in the wrongful death action, and $1,500 for the recovery in the survival action. This fee, however, was not to be paid to the widow's attorney as a lump sum but instead at the rate of $30 a week from April 10, 1974, to March 24, 1998 (1,250 weeks at $30 = $37,500). (Record at 94a, 160a–162a)

On June 2, 1975, appellee brought the action that is now before us; the action is in trespass, and seeks two distinct recoveries, which will be discussed in a moment.

On April 14 and June 20, 1977, the action was tried by a judge sitting without a jury. On July 8, 1977, the judge found: that the accident in which Jones was killed and appellee's automobile destroyed was the result of appellant Mertz's negligence; that at the time of the accident Mertz was acting in the course of his employment with appellant International Artware; that the fair market value of appellee's automobile was $2,200; and that in consequence of the accident, appellee's workmen's compensation insurance premiums were increased a total of $7,908.60. The judge concluded that Mertz's negligence "was a substantial fact in causing" those damages (Record at 35a); he therefore entered an order in appellee's favor in the amount of $10,-108.60. Appellants filed exceptions. On September 20, 1977, these were dismissed, and final judgment was entered. This appeal followed.

The appeal does not challenge the propriety of the award of $2,200 for the destruction of appellee's automobile; the only issues argued concern the propriety of the award of $7,908.60 for the increase in appellee's workmen's compensa-

484

tion insurance premiums. In their brief appellants have defined these issues as follows: 1) that the lower court "erred in finding [that the payments of $30 a week] were not counsel fees," Appellant's Brief at 7; 2) that with respect to appellee, the settlement of the wrongful death and survival actions "amount[ed] to an accord and satisfaction", Appellant's Brief at 9; and 3) that the lower court erred in finding that appellee "had no reasonable means of avoiding or negotiating the increase of insurance premiums, and were the premiums properly calculated?" Appellant's Brief at 12.

We shall not consider the second of these issues; it has been waived, for appellants did not raise it in their exceptions to the lower court's findings and order. *See* Pa.R.Civ.P. 1038(d); *cf. Leopold v. Davies,* 246 Pa.Super. 176, 369 A.2d 868 (1977). We might also decline to consider the first and third issues. Appellants' brief has no section entitled "Statement of Questions Involved." Pa.R.App.P. 2115 states: "The statement of the questions involved must state the question or questions in the briefest and most general terms . . . . This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily *no point* will be considered which is not set forth in the statement of questions involved or suggested thereby." Where defects in an appellant's brief are "substantial", we have quashed the appeal on that basis alone. *Commonwealth v. Sue Wyant,* 254 Pa.Super. 464, 386 A.2d 43 (1978); *Commonwealth v. George Scott,* 237 Pa.Super. 160, 346 A.2d 359 (1975). Nevertheless, since the first and third issues have been addressed in appellants' brief, and in reply, in appellee's, we shall consider them.

With respect to the first issue raised by appellants: As we understand appellants' argument, it is as follows: When a carrier, such as Pennsylvania Manufacturers', recognizes an obligation to pay a workmen's compensation claim in installments—such as the widow's claim here—it must set up a reserve to cover the claim. In computing the amount of the reserve, the carrier may not take into account the

counsel fee due the attorney who represented the claimant in the claimant's action against a third party. Here, however, Pennsylvania Manufacturers' did take into account the counsel fee. Accordingly, it set up too large a reserve, and that resulted in its increasing appellee's workmen's compensation insurance premiums more than they should have been increased.

Before this argument is considered from a legal point of view it may be useful to consider whether it is factually accurate.

It is possible to read the opinion of the lower court as saying that the argument is not factually accurate. In particular, Finding of Fact No. 4 says that workmen's compensation insurance premiums

are controlled by the Pennsylvania Experience Rating Plan Manual issued by the Pennsylvania Compensation Rating Bureau. As a consequence of [the widow's] workmen's compensation claim . . . [appellee] was required to pay [a total of $7,908.60] increased workmen's compensation insurance premiums . . . .

Record at 33a–34a.

This at least implies that the court believed the increased premiums had been properly computed and charged.

It is difficult, however, to determine from the record whether this belief, if it was the court's belief, was warranted. As already mentioned, the compensation agreement was not made part of the record. The record is unclear regarding just what was the amount of the reserve set up to provide for the payments required by the agreement. (See, e. g., Record at 125a, 126a, 153a.) Appellants' expert witness seems to have based his opinion that the reserve was improperly large, and included provision for counsel fee, on the belief that Pennsylvania Manufacturers' had recovered all of its loss by virtue of its subrogation claim against the fund created by the third party settlement. See Record at 154a, 156a. However, on rebuttal appellee called a representative of Pennsylvania Manufacturers' who testified that it had not recovered all of its loss. Record at 174a. In

addition, appellants' expert on cross-examination seems to have said that if Pennsylvania Manufacturers' had not agreed to pay the widow's counsel $30 a week, it would have had to pay the widow, Record at 162a–163a, which suggests that the amount of reserve to cover the $30 a week payments was in reality to cover an obligation to the widow. This may have been the view of the lower court, for in its Finding of Fact No. 7 the court rejected "[appellants' contention] that the $30.00 per week obligation of the workmen's compensation carrier is really a payment of counsel fees," going on to indicate that the obligation reflected a private arrangement between the widow and her attorney that the entire fund created by the third party settlement would go to the widow, with the attorney to receive his fee in installments instead of as a lump sum. Record at 34a–35a.

The questions raised by these several incomplete or ambiguous aspects of the record need not be answered; for when appellants' argument is considered from a legal point of view, it becomes apparent that whether the reserve was properly or improperly computed is of no importance to the disposition of this appeal.

Appellants have argued that the reserve was improperly computed. Let us suppose it was. That would mean that appellee would have a claim against Pennsylvania Manufacturers'; the claim would be that because the reserve was too large, the premiums charged appellee by Pennsylvania Manufacturers' were too high. However, how could that conclusion in any way help appellants?

The fatal defect in appellants' argument is that no where in their brief do they suggest any answer to this question. Thus we are left in a state of suspension: appellants have made an argument that appears to have no relevance, for even if it is accepted, it cannot afford appellants any basis for relief.

As one reflects upon this curious situation, the reason for it becomes clear. The lower court found that the increase in appellee's workmen's compensation insurance premiums was attributable to appellants' negligence. Specifically:

. . . The negligence of [appellants] was a substantial factor in causing the loss [both the $2,200 in property damage to appellee's automobile and the increase in premiums]. The loss would not have been incurred but for said negligence.

Lower Court Finding of Fact No. 5, Record at 34a. In their brief to us, appellants have in no way challenged this finding; they have not even alluded to it.

Judge LIPEZ, in his concurring and dissenting opinion, has expressed the view that the finding reflects a misapprehension of the concept of legal causation. We have been unwilling to join the judge in this expression, because it is offered on his initiative; it does not derive from any argument made by appellants' brief. As the record stands, the finding—or conclusion; the characterization is immaterial—is unchallenged by appellants in their brief. Accordingly, we have no power to challenge it on our own. *See Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975); *cf. Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

■ With respect to the third issue raised by appellants; appellants have suggested in their brief several actions that might have resulted in appellee's workmen's compensation insurance premium being lower ("a request for a rebate"; "some type of modification"; a different "premium discount"). Appellants' Brief at 12. These suggestions, however, do not show how appellee could have mitigated its damages for they all pertain to actions that might have been taken by Pennsylvania Manufacturers'—not by appellee. Appellants assert that appellee "might very well have been able to purchase the same coverage at a lesser figure." Appellants' Brief at 13. The record does not support this assertion.

Affirmed.

LIPEZ, J., files a concurring and dissenting opinion.

LIPEZ, Judge, concurring and dissenting:

International Artware Corporation (Artware) and its employee, John L. Mertz (Mertz), defendants below, appeal the judgment against them awarding plaintiff-appellee the amount of $10,108.60. Upon review of the complete record, including the transcript of the non-jury trial below, I conclude that the court below did not pass upon the dispositive element of this case, namely, whether the defendants owed a duty to the plaintiff to use reasonable care to prevent the harms that befell the plaintiff. The trial court made both a finding of fact and a conclusion of law to the effect that appellant's "negligence . . . was a substantial factor in causing the loss;" this conclusion, however, cannot be reached without first resolving the issue whether appellants owed a duty of reasonable care to appellee, of which issue the court below made no mention.

The majority assert that this court is not permitted to reach this issue because the parties, having completely misperceived the legal issue involved on this appeal, failed to address it in their briefs.[1] They state that this result is dictated by *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974) and *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

The cases cited by the majority do not control the instant appeal for several reasons. "In an appeal from a trial without jury, we may consider elements not passed upon below and make our own findings thereon." *Thompson v. Equitable Life Assurance Soc'y* 447 Pa. 271, 275–76, 290 A.2d

---

1. Appellants raised the issue of legal causation of appellee's damages in the Preliminary Objections to appellee's complaint. The trial court held, in a signed opinion, that "as a matter of law, [the increase in insurance premiums] is not recoverable as having been legally caused by the [appellant's] negligence." Following reargument of the issue of superseding cause, the court below permitted appellant to amend its complaint in order once again to allege that appellant had negligently caused the increase in premium. Following the trial, appellants took exception to the court's finding and conclusion that their negligence had been a substantial factor in appellee's loss and to the court's denial of their pretrial motions, but neither exception was brought before the Superior Court.

422, 424 (1972); *Innes v. Nanticoke City School District,* 342 Pa. 433, 20 A.2d 225 (1941); *Gen'l Contract Purchase Corp. v. Bitomski,* 102 Pa.Super. 266, 156 A. 727 (1931). In *Thompson,* plaintiff sued an insurance company, seeking payment of the proceeds under expired life insurance policies of which she was beneficiary. The Supreme Court of Pennsylvania found that the issue whether plaintiff's failure to bring suit before expiration was negligent had not been determined by the trial court. The Supreme Court then made its own findings on that issue based on the trial transcript and record, and reversed the Superior Court and the trial court. This was *not* an application of the so-called "fundamental error" rule abolished by *Dilliplaine* and *Clair.* Those cases concerned a clear mistake of law by the court below in a jury trial, to which mistake counsel failed to object, raising the matter for the first time on appeal. In holding that, as a prerequisite to consideration thereof by an appellate court, such matters must be brought to the attention of the trial court in a proper and timely fashion, the Supreme Court of Pennsylvania reasoned that "failure to interpose a timely objection at trial denies the court a chance to hear argument on the issue and an opportunity to correct error." *Dilliplaine,* supra, 457 Pa. at 255, 322 A.2d at 117. Neither *Thompson* nor the instant case concern a legal error committed by the court. The court below conducted the trial according to the case pleaded by plaintiff. The mistake in the case before us was not a mistake of law committed by the trial court before a jury, but rather was a misapprehension by the parties and the court below of the legal issues involved. *Dilliplaine* and *Clair* are thus distinguishable from the case at bar because they dealt with mistakes of law committed by the court during a jury trial, while *Thompson* and the instant case concern failure of the parties and the court to consider certain issues in a non-jury proceeding.

In *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975), the Pennsylvania Supreme Court held that the Superior Court had "exceeded its proper appellate function" by *sua sponte* raising and deciding an issue not presented to it. But

*Wiegand,* too, is distinguishable from the instant case. *Wiegand* was an action for divorce from bed and board filed by a wife against her husband. The trial court granted the wife's petition and awarded her counsel fees. The husband, in his appeal to the Superior Court, raised questions concerning the scope of cross-examination as to a certain matter, and as to the trial court's discretion in the award of counsel fees. This court decided that the statutory basis for the wife's action was void as repugnant to the Pennsylvania Constitution. The Supreme Court reversed and remanded the case to the Superior Court for consideration of the issues raised at trial and preserved for review. The constitutional issue was not implicit in the wife's cause of action, the decision of the court below, or the husband's appeal. In the instant case, since duty is an element of negligence, the issue not considered below, namely duty, *is* implicit in the trial court's finding and conclusion that appellants were negligent; a finding of duty is a *sine qua non* to a finding of negligence, for negligence is, of course, a matter of law and not of fact. The lower court's concluding that appellants were negligent without making a finding as to the existence of an essential element of negligence is tantamount to, for example, a court sitting without a jury finding a defendant guilty of burglary without finding that the defendant intended to commit a crime. The question of appellant's duty, not considered by the court below, is obviously implicit in the case as pleaded, in the trial court's Opinion, and in this appeal. Without a duty, there is no negligence and without negligence, no recovery; all arguments advanced on the appeal are rendered completely irrelevant. I believe that, since *Wiegand, Clair,* and *Dilliplaine* are thus distinguishable from the instant case both on the facts and on the law, and since the former three cases make no mention of or references to the principle of obvious long standing expressed in *Thompson* that an appellate court may make its own findings on elements not passed upon in non-jury trials below, this Court should consider this crucial issue. While I recognize the changes that have been wrought by *Dilliplaine, Clair,* and *Wiegand* as to the responsibilities of courts and

trial counsel, an appellate court nevertheless retains its inherent power to correct mistakes, particularly where fact finding and conclusions of law by a trial court in a nonjury proceeding are involved. Until the Supreme Court of Pennsylvania explicitly holds that such cases as *Thompson* are no longer good law, we should be able to rely on them.

The precedential value of the majority opinion also carries great potential for harm. To hold that a negligent defendant is liable for the entire amount of increased insurance premiums opens the door to liability for the complete loss experience of the insured plaintiff as determined by the insurance carrier, regardless of whether the complete increase is a result of the particular incident for which defendant was responsible. If, as is most often the case, the action is brought by an insurance company subrogated to the rights of its insured, the prospect of an insurance company collecting increased premiums from its insured while simultaneously collecting the same amount as negligence damages from a defendant (or from defendant's insuror) is untenable.

I shall now consider the instant case on its merits.

On May 4, 1973, appellee's employee, one John Jones, was killed in a collision between the automobile he was driving and an automobile driven by Mertz. The automobile driven by Jones, which was destroyed in the collision, was owned by Canada Dry Bottling Company of Williamsport, Inc. (Canada Dry), while the vehicle driven by Mertz was owned by him. Both employees were engaged in the course of employment with their respective employers at the time of the accident. The court below found, and it is not disputed on this appeal, that the accident was caused by the negligence of Mertz.

A civil action was brought by Jones' wife and children against Mertz and Artware. Pursuant to a settlement of that action, Canada Dry's workmen's compensation carrier, Pennsylvania Manufacturers' Association Insurance Co. (PMA) made and agreed to make periodically certain payments to Jones' widow and children. For the year in which the settlement was filed, and for two years thereafter, PMA

increased Canada Dry's workmen's compensation premiums by a total of $7,908.60. Canada Dry paid the increased premium, and brought this action against Artware and Mertz in order to recover the amount of the premium increase and also the value of its automobile destroyed in the accident. Immediately before it was destroyed, the automobile had a fair market value of $2,200.00.

"It is fundamental that negligence and liability therefor cannot be predicated upon a state of facts which does not impose any legal duty." *Zayc v. John Hancock Mut. Life Insurance Co.,* 338 Pa. 426, 430, 13 A.2d 34, 36 (1940). In other words, there is no negligence, with regard to the injury for which damages are sought, if there was no legal duty on the part of the defendant to use reasonable care to prevent such injury to the plaintiff. This legal duty is one to foresee the likelihood of the happening of an injury apt to result from one's act. *Jowett v. Pa. Power Co.,* 383 Pa. 330, 335, 118 A.2d 452, 455 (1955). As stated by Chief Judge (later United States Supreme Court Justice) Cardozo in *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253 (1928), "[T]he orbit of danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty. . . . The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." This language was quoted with approval by the Supreme Court of Pennsylvania in *Dahlstrom v. Shrum,* 368 Pa. 423, 425, 84 A.2d 290–91 (1951). Therefore, even though the issue of foreseeability has no place in the determination whether the acts of one party were the proximate or legal cause of harm to another, *Tobash v. Jones,* 419 Pa. 205, 219, 213 A.2d 588, 592 (1965), it is an essential element of negligence. *Metts v. Griglak,* 438 Pa. 392, 264 A.2d 684 (1970). Conduct is negligent only if the harm flowing from such conduct could reasonably have been foreseen and prevented. Lack of ordinary care is failure to anticipate what is reasonably probable—not what is remotely possible. *Brusis v. Henkels,* 376 Pa. 226, 230, 102 A.2d 146, 148 (1954).

Thus, because I conclude that appellant's liability turns upon the issue of foreseeability of the injuries that befell the appellee (the destroyed car and the increased premiums), I do not, with regard to the increased premium issue, reach the determination whether appellant's conduct was a "substantial factor" in bringing about harm to appellee. "Foreseeability is not a test of proximate cause; it is a test of negligence." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 97, 337 A.2d 893, 900 (1975).

Since the trial court indicated in its opinion that its judgment was the total of two distinguishable sums, I shall consider each part of the award separately.

## I.

### The Automobile Damage

The trial court found that the destruction of appellee's automobile was caused by the negligence of defendant Artware's employee, defendant Mertz, who was engaged in the course of his employment with Artware at the time of the collision. It is obvious that a foreseeable consequence of a failure of a driver of an automobile to exercise due care in operating his vehicle is the destruction of another vehicle being operated by its driver as appellee's vehicle in this case presumably was. There was thus a duty on the part of Mertz to use due care with regard to the automobile driven by Jones, and, for his breach of this duty, which breach was a substantial factor in the destruction of the other vehicle, Mertz and, by *respondeat superior*, Artware, are liable in damages in the amount of $2,200.00—the fair market value of Canada Dry's automobile before it was destroyed.

## II.

### The Increased Workmen's Compensation Premiums

The trial court also made the legal conclusion that Mertz's negligence was a substantial factor in the damage to appellee caused by the increase in workmen's compensation premiums. Before the issue whether negligence has been a

substantial factor in causing injury is reached, however, it must be determined whether the injury was reasonably foreseeable, since without foreseeability there is no negligence. *Brusis v. Henkels*, supra.

The question of causation-in-fact is not in dispute. As a result of the collision, appellee's employee died and workmen's compensation payments were made by appellee's insurer on account of that death. A concatenation of factors, including actuarial consideration of appellee's total loss experience, led to an increase in appellee's workmen's compensation premiums which increase appellee was awarded by the trial court. But factual causation does not by itself permit recovery; liability is and must be limited by application of certain rules of law. "[T]he concept . . . of negligence . . . was designed not only to permit recovery for a wrong, but to place such limits upon liability as are deemed socially or economically desirable from time to time." *Whitner v. Lojeski*, 437 Pa. 448, 455, 263 A.2d 889, 893 (1970). The increase in appellee's premiums as a result of such a concurrence of circumstances as is found in this case was not reasonably foreseeable. Appellants are properly liable only with respect to those harms which proceeded from a risk or hazard the foreseeability of which rendered Mertz's conduct negligent. *Metts v. Griglak*, supra. Pecuniary harm such as the loss of an automobile to the owner thereof is certainly a foreseeable consequence of negligent operation of another vehicle by its driver. However, an increase in Canada Dry's workmen's compensation premiums because of a concurrence of circumstances, including the owner's prior loss experience and the internal financial practices of the particular insurance carrier, is economic harm so attenuated and remote from the cause-in-fact thereof as to be far beyond the orbit of danger perceptible to the reasonable man in the situation in which defendant Mertz found himself. *See* C. Morris, *Duty, Negligence and Causation*, 101 *U.Pa.L.Rev.* 189 (1952).

Therefore, since the risk of increased premiums was an eventuality not reasonably foreseeable to a reasonable man,

there was no duty on appellant's part to use reasonable care to prevent that harm. *Metts v. Griglak,* supra. There being no duty, appellants are not liable therefor, and that part of the damage award equal to the amount of the increased premium cannot stand.

In view of the above analysis of the case on the merits, I am greatly concerned that the majority's decision countenances a negligence theory contrary to the well-settled concepts of the law of negligence. The majority opinion may be read as either eliminating the element of duty from an action for negligence or expanding that concept beyond reasonable limits, both of which readings would serve to introduce new uncertainties into this area.

I would hold therefore that that portion of the judgment arising out of the destruction of the appellee's automobile be affirmed; but as to the portion attributable to the increase in workmen's compensation premiums, I would reverse.