462 A.2d 800

**WHIRLEY INDUSTRIES, INC., Appellant,**

v.

**Leatrice G. SEGEL and Harry C. Segel, Her Husband, and Segel & Son, Inc., Jointly and Individually.**

Superior Court of Pennsylvania.

Argued April 26, 1982.

Filed July 1, 1983.

76

David W. Swanson, Warren, for appellant.

Will J. Schaaf, Erie, for appellees.

Joseph T. Messina, Erie, for participating party.

Before BECK, MONTEMURO and POPOVICH, JJ.

PER CURIAM:

In this case of first impression, appellant Whirley Industries, Inc. seeks to recover the increased costs of Workers' Compensation insurance premiums resulting from benefits paid by Whirley's insurer to Whirley's employee, to compensate the employee for injuries sustained due to negligence of the third party tortfeasor. The lower court sustained a demurrer by appellee Leatrice G. Segal, the party whose negligence caused the injuries, and we affirm.

The facts, agreed to by the parties, concern a motor vehicle accident in which William W. Stockdill, Whirley's employee, was injured. Stockdill, in the course of his employment, drove Whirley's truck to the United States Post Office in Warren, Pennsylvania. After completing his employer's business at the Post Office, Stockdill returned to his parked vehicle and passed in front of it. At that time, appellee Segal was operating a car directly in the rear of the Whirley vehicle. She collided with the parked truck, forcing it onto Stockdill, causing him severe bodily injuries. The injuries suffered by Stockdill were directly and proximately caused by the negligence of driver Segal. All claims of Stockdill against Segal have been satisfied and a complete release has been executed by Stockdill in favor of Segal and the other defendants. As a result of his injuries, Stockdill was unable to work, and he received Workers'

Compensation benefits provided by the Pennsylvania Manufacturers Association, the insurance carrier of Whirley. The carrier thereupon increased the premiums charged to Whirley by $22,451, and Whirley began an action in trespass to recover this sum directly from Segal.

Prior to argument on appeal, Segal filed a Motion for Dismissal of Appeal based on Whirley's failure to comply with Pa.R.C.P. 1038(d):

> (d) Within ten (10) days after notice of the filing of the decision, exceptions may be filed by any party to the decision or any part thereof, to rulings on objections to evidence or to any other matters occurring during the trial. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to final judgment, leave is granted to file exceptions raising these matters. No motion for a new trial, for judgment non obstante veredicto, in arrest of judgment or to remove a nonsuit may be filed.

A per curiam order denied the Motion without prejudice to the parties' rights to submit arguments on the issue of waiver in their appellate briefs. Although neither party has referred to Rule 1038(d) in the question now presented to this Court, we believe it is appropriate to begin by addressing the issue of appealability.

■ The requirement of filing exceptions within ten days after notice of filing of a decision in a case, in order to appeal the decision, is part of Rule 1038, which pertains to trial by a judge sitting without a jury. In the case at bar, the lower court's order granted a demurrer following a submission of an "Agreed Statement of Facts." A demurrer is ordinarily covered by Rule 1017(b)(4). In its opinion the trial court treated the demurrer as a request for summary judgment, relying on *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). Summary judgment is governed by Rule 1035. As either the grant of a demurrer or summary judgment, the motion is a final order, in that it effectively puts the non-moving party out of court. *Gasbarini's Estate v. Medical Center of Beaver County, Inc.*,

*Rochester Division,* 487 Pa. 266, 409 A.2d 343 (1979); *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978); *Gordon v. Gordon,* 293 Pa.Super. 491, 439 A.2d 683 (1981). The order of the lower court here, sustaining the demurrer, is therefore appealable under 42 Pa.C.S. § 742. No exceptions need be taken and, indeed, absent any testimony by parties or witnesses, or charge by the court, there is nothing in the record to which Whirley could have excepted. We therefore proceed to the merits of the appeal.

■ While Workers' Compensation is the exclusive remedy of an employee against his employer for work-related injuries, when an employee-victim's injuries are the result of negligence by a third party, § 671 of the Workers' Compensation Act[1] allows the employee to bring an action against that third party. The victim's employer then has the right of subrogation, so long as he can show that he was compelled to make payments to his employee by reason of the negligence of the third party. *Dale Manufacturing Co. v. Workmen's Compensation Appeal Board,* 34 Pa.Commw. 31, 382 A.2d 1256 (1978), aff'd 491 Pa. 493, 421 A.2d 653 (1980), Reargument denied (1980).

■ The action against the third party tortfeasor must be brought by the injured employee. Our Court has recently held that the Workers' Compensation insurance carrier has no independent cause of action for indemnification by and contribution from the negligent party who caused the insurance carrier to pay out benefits. The subrogation rights of § 671 are the sole and exclusive remedy against third party tortfeasors, i.e. the employee-victim must sue, and the employer's carrier is subrogated to the employee's claim. *Reliance Insurance Company v. Richmond Machine Company, Reliance Electric Company, and Bendix Westinghouse,* 309 Pa.Super. 430, 455 A.2d 686 (1983). *Reliance Insurance* did not involve a motor vehicle accident.

■ Whirley argues that he is suing in trespass because he is excluded from exercising his subrogation right (which would have prevented the increased insurance premiums) by

1. Formerly Workmen's Compensation Act, 77 P.S. 1 *et seq.*

the Pennsylvania Motor Vehicle No Fault Act[2] and recent case law interpreting some of its provisions. § 301 of the No Fault Act abolished tort liability for personal injuries in motor vehicle accidents with certain exceptions. One of these exceptions is that tort liability remains for any loss that exceeds the "basic loss benefits" of § 202(a)(b)(c)(d). However, No Fault § 206 requires that before an employee can recover No Fault benefits, Workers' Compensation benefits which have been paid must first be deducted. The effect of these No Fault provisions is that the Workers' Compensation insurer must pay all that he is required to pay as a first step in calculating the net loss of the victim. Tortfeasor liability is abolished except for a net loss which is in excess of the basic loss benefits paid by No Fault. *Brunelli v. Farelly Brothers*, 266 Pa.Super. 23, 402 A.2d 1058 (1979); *Vespaziani v. Insana*, 293 Pa.Super. 117, 437 A.2d 1234 (1981) Reargument denied, 1982; *Motley v. State Farm Mutual Automobile Insurance Co.*, 303 Pa.Super. 120, 449 A.2d 607 (1982).

Since our Court decided *Brunelli* and *Vespaziani*, our panel cannot challenge the validity of these opinions relating to subrogation rights and claims against third party tortfeasors under Workers Compensation and the No Fault Act. We note that *Vespaziani* is presently before the Supreme Court.[3] At the time of this appeal, however, employers of victims of motor vehicle accidents are excluded from subrogation rights afforded by § 671 of Workers Compensation by current statutory interpretation of the No Fault Act. Whirley therefore brings this suit against Segal directly, claiming that this is the only way that he can recover the increased costs of his Workers Compensation insurance premiums.

The liability of third party tortfeasors for an employer's increased insurance costs has been faced once before in the Pennsylvania courts, but not settled. In *Canada Dry v.*

**2.** 40 Pa.C.S. 1009.101 *et seq.*

**3.** Appeal of Transport Insurance Co. Allocatur Granted. 33 W.D. Appeal Docket 1982.

*Mertz*, 264 Pa.Super. 480, 400 A.2d 186 (1979), employer Canada Dry sued for an increase in Workers' Compensation premiums incurred because Mertz caused the death of one of Canada Dry's employees. The lower court found that Mertz was negligent, and that his negligence was a substantial factor in causing the increase in premiums. Our Court upheld Canada Dry's claim against Mertz. The majority opinion, however, did not reach the question of whether Mertz was liable to Canada Dry because of his negligence, for the parties did not argue this issue on appeal. The majority addressed the two questions which were argued before the Court: (1) whether the insurance carrier had set up too large a reserve and therefore increased Canada Dry's premiums more than they should have been increased; and (2) whether Canada Dry had failed to avoid or negotiate the increase, which may have been improperly calculated. On both these issues, the Court held for appellee Canada Dry.

Judge Lipez, dissenting in *Canada Dry*, raised the issue of Mertz's negligence and consequent liability for insurance costs on his own initiative.

Basing his analysis on the seminal opinion of Chief Judge (later United States Supreme Court Justice) Cardozo in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), the dissent reasoned that negligence liability can not be predicated upon facts which do not impose a legal duty. This legal duty is one to foresee the likelihood of the happening of an injury due to one's own actions. Conduct is negligent only if the harm flowing from the conduct could reasonably have been foreseen and prevented. Quoting Judge Cardozo's well-known statement, "[T]he orbit of danger as disclosed to the eye of reasonable vigilance would be the orbit of duty ... The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension," *Canada Dry*, 264 Pa.Superior at 492, 400 A.2d at 192, Judge Lipez concluded that the risk of increased insurance premiums was an eventuality not reasonably foreseeable. There was no duty on the part of the

driver to foresee the harm of the insurance cost rise, and since there was no duty to foresee it, he argued, the driver could not be held liable for it.

In the instant case we face an argument by Whirley that Segal's negligence was the direct and proximate cause of his increased premiums, which Whirley, as an innocent party, has had to bear. Viewed from the eyes of Whirley, the damages are not at all remote. They are immediate and acute. One effect of the holding in *Brunelli* has been to impose on employers the primary obligation for financial support to employees who are severely injured in motor vehicle accidents. Segal maintains that the law does not impose an obligation to guard against remote possibilities in life, and that when a pedestrian is injured by a driver's negligence, the orbit of duty owed by the driver does not encompass the business losses of the pedestrian's corporate employer.

■ We are convinced of the merits of Segal's argument. As Judge Lipez pointed out in *Canada Dry,* an increase in an employer's Workmen's Compensation premiums following an automobile accident is not reasonably foreseeable by a driver. Moreover, insurance premium increases result from a concurrence of circumstances, including the owner's prior loss experience and the internal financial practices of the particular insurance carrier.[4] The economic harm is too remote from the cause in fact to be attributable to the driver. For these reasons, we believe Segal's demurrer was correctly sustained.

In this resolution of Whirley's appeal we do not reach the question of whether the law, so applied, effects an injustice to employers whose business is conducted on the highways of the Commonwealth, and for whom a substantial segment of the work force is engaged in the operation of motor

---

**4.** The statutory scheme of risks, rates, and related matters is set out in the Insurance Company Law, 40 P.S. § 814, which provides for review of rates by the Insurance Commissioner. See *Pennsylvania State Association of Township Supervisors v. Commonwealth Insurance Department,* 50 Pa.Commw. 204, 412 A.2d 675 (1980); *Nagle v. Pennsylvania Insurance Department,* 46 Pa.Commw. 621, 406 A.2d 1229 (1979).

vehicles. The present interpretation of the statutes operates to deprive such employers of the right to recoup all or part of the losses that are incurred by third party negligence. Since such employers are denied rights of subrogation set forth in Worker's Compensation § 671 (a right to which employers in general are legally entitled) it may be that a serious inequality has been imposed on one group of employers, without giving them an adequate substitute.[5]

The legislature should consider whether the combined effect of the two Acts discriminates against one classification of employers in a way that was not originally intended, and which may not be justified by any rational relationship to a legitimate state interest. Since Whirley is not such an employer, we are not influenced by these considerations in the disposition of the instant case.

The order of the lower court is affirmed.

MONTEMURO and POPOVICH, JJ., concur in the result.

---

**5.** The constitutionality of § 301(a) of the No Fault Act withstood a challenge on Equal Protection grounds in *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975), Rehearing denied 1975. The opinion did not command a clear majority (two justices concurred, one justice concurred in the result, and three justices dissented). The Supreme Court held that distinctions between different classifications of victims in § 301(a) did not violate Equal Protection, but the Court did not reach the question of subrogation rights of employers of victims.