457 A.2d 575

**Laverne PFLUGH, Appellant,**

v.

**Betty J. PFLUGH.**

Superior Court of Pennsylvania.

Argued June 16, 1982.

March 11, 1983.

Joseph N. Bifano, West Mifflin, for appellant.

Anthony A. Seethaler, Bridgeville, for appellee.

Before BROSKY, JOHNSON and MONTGOMERY, JJ.

BROSKY, Judge:

This appeal is from an order dismissing appellant's motion to strike appellee's petition for alimony and equitable distribution. Two issues are raised. First, it is argued that appellee failed to apply for leave to proceed under the provision of the No-Fault Divorce Code.[1] Second, appellant contends that he failed to receive either notice or service of this petition. On the basis of either of these arguments, appellant maintains that the petition for alimony and equita-

---

1. 23 Pa.S.A. § 101 et seq. The instant divorce action had been initiated prior to that Act's effective date. Leave to proceed under the new Code is provided for in 23 Pa.S.A. § 103.

ble distribution should have been denied. For the reasons below, we reverse and remand.

The instant divorce action was initiated prior to the effective date of the new Divorce Code, 23 P.S. § 101 et seq. This Act also provided, for the first time in this Commonwealth, for alimony and equitable distribution of marital property in connection with an absolute divorce. Under the new Code, an action instituted prior to the effective date of the Code but not yet final may proceed under the provisions of the Code "upon application granted." 23 Pa.S.A. § 103. Appellant argues that no such application to proceed was ever filed by appellee. We disagree. Appended to the petition for alimony and equitable distribution was a proposed order of court, which was subsequently signed by the Honorable George P. Kiester, granting her leave to file said petition. While we do not believe this to be the preferable procedure for applying for leave to proceed under the new Divorce Code, we believe it does constitute such an application.

This result is indicated by the opinion in *Kaskie v. Kaskie*, 295 Pa.Super. 523, 442 A.2d 261 (1982). That case also involved an alleged irregularity in the form of a request to transfer to the new Divorce Code. There, as here, a claim was filed for alimony and equitable distribution.[2] This court held in *Kaskie* that such a claim was an adequate means of filing a request to transfer the proceedings to the Divorce Code.

> While the lower court's analysis comports with the language of section 103, our limited experience with the provision has disclosed a variety of methods triggering transfer of pending cases to the Divorce code. For example... There may still be other permutations of procedure that have, as yet, escaped appellate review. Considering the uncertainty that existed before the filing of our opinions in *Gordon* [*v. Gordon*, 293 Pa.Super. 491,

---

**2.** As noted above, in the case *sub judice* there was also appended a proposed order of court. This strengthens our holding that the form of the application to transfer was adequate here.

439 A.2d 683], *Toll* [*v. Toll,* 293 Pa.Super. 549, 439 A.2d 712], and *Conrad* [*v. Conrad,* 293 Pa.Super. 558, 439 A.2d 717] on December 18, 1981, it would be unfair to debar appellant because of a procedural irregularity in her attempt to effectuate a transfer of this case to the Divorce Code.

*Kaskie v. Kaskie,* supra, 295 Pa.Superior Ct. at 525–6, 442 A.2d at 262–3.

The petition before us was filed a year before *Gordon, Toll* and *Conrad* came down. Thus, the factual context present in Kaskie is parallel to the one before us on all pertinent points. *Kaskie's* holding is therefore applicable here and the petition will be considered adequate in form.

■ As to the notice issue, Pennsylvania Rule of Civil Procedure 233(a) provides that:

All legal papers, except writs and pleadings, to be served upon a party under any Rule of Civil Procedure including but not limited to motions, petitions, answers thereto, rules, orders, notices, interrogatories and answers thereto, shall be served by leaving a copy for or mailing a copy to him at the address of the party or his attorney of record endorsed on an appearance or prior pleading of the party...[3]

The petition in question was filed on November 17, 1980 and was granted by the Court on December 26, 1980. Appellant states that he was given no notice of this petition until receipt of a letter from appellee's counsel mailed on March 17, 1981. The court mailed appellant on May 29, 1981 notice that a hearing would be held on the substantive matters raised by the granted petition.[4] The record con-

---

**3.** Appellant was represented by the same counsel in a motion made on August 4, 1980 and in the initial complaint on May 5, 1980. Both of these dates occurred before the petition in question was filed. Thus, in addition to serving appellant himself, appellee had the option of serving appellant's attorney of record.

**4.** The hearing was to determine the form of equitable distribution and the amount, if any, of alimony. The decision to proceed at all on

firms appellant's allegations and they are not denied by the trial court or by appellee.

The trial court made reference to this issue in its opinion. It is true that defendant's petition could have been more clearly pleaded; however, it cannot be said that plaintiff was without notice.

The trial court apparently misapprehended the nature of appellant's notice argument. It was not contended that he failed to receive notice due to a faulty wording of the petition.[5] Appellant's argument was, rather, that he quite literally failed to receive notice; in that he never received either informal notice or service of the petition until long after the petition was granted. This argument was clearly made and preserved in exceptions.

Appellee makes two counter-arguments on this issue. First, she states that "there was some confusion as to the procedure for filing such petitions." We note that appellee was not so confused that she failed to file the petition with the Court. Serving a copy of the petition on the opposing party was an elementary requirement of civil procedure and her failure to do so cannot be excused.

Second, appellee argues that the granting of her petition was nondiscretionary and that, therefore, appellant was not injured by his lack of notice.[6] Even if this were indisputably true, we would not find it a convincing reason for not keeping opposing counsel fully informed about petitions filed with the Court.

Also in opposition to appellee's argument, this Court has established that the trial court does indeed have some discretion (albeit very little), to deny a § 103 petition. *Gordon v. Gordon*, 293 Pa.Super. 491, 439 A.2d 683 (1981).

these new Divorce Code matters was made the prior December when the petition was granted.

5. The faulty pleading argument went to issue number 1, above.

6. In a closely related vein, she states that she did not appear before the court to argue for her petition. Our treatment of appellee's second argument will also dispose of this argument.

The existence of discretion in the trial court renders appellant's absence from the § 103 petition proceedings a serious harm, and not merely a harmless error.

*Gordon* and the cases following upon it also hold that, "if one party opposes the application the court must ensure that that party has the opportunity to raise objections." *Conrad v. Conrad*, 293 Pa.Super. 558 at 561, 439 A.2d 717 at 718 (1981). Appellant was given no opportunity to raise objections to the application as he was not informed of its existence.

It would be an unprofitable and highly speculative exercise for this Court to conjure up all the potential arguments for the denial of the petition and then determine if any one of them would have won the day. That is simply not an appellate court function. The fact is that appellant was denied the opportunity to make any arguments in the court below before the decision was made to grant the petition. It is that denial, through lack of notice, of a forum to challenge the petition that is determinative here; not the merit of potential arguments never made.

Research has disclosed no appellate cases dealing with a failure to comply with Pa.R.Civ.P. 233(a). The rule, being straight-forward, has evidently not been the source of controversy. However, an addition to Rule 233 has generated one instructive case. Rule 233(c) requires that *all* parties to a suit be served with all papers that must be served under subsection (a). Where such service was not made on another party to the suit the order pursuant to those papers was declared invalid. *Falco v. Insurance Co. of North America*, 72 Pa.D & C 2d 436 (1975). If an order is rendered invalid through the failure of one of the parties to a suit receiving service, then we may fairly extrapolate the same result when the only opposing party in a suit does not receive service.

The petition to proceed under the No-Fault Divorce Code with respect to alimony and equitable distribution should not have been granted in the absence of notice to the opposing party. Accordingly, we reverse and remand for

proceedings consistent with this opinion, including a hearing on the application to proceed under the new Divorce Code. This Court does not retain jurisdiction.