472 A.2d 1072

**Blanche STEINBERG**

v.

**SEARS, ROEBUCK AND COMPANY and Duralite Company, Inc.**

**Appeal of SEARS, ROEBUCK AND COMPANY.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1983.

Filed Jan. 27, 1984.

John M. Corcoran, Philadelphia, for appellant.

Barry H. Oxenburg, Philadelphia, for Steinberg, appellee.

Gary Keith Feldbaum, Philadelphia, for Duralite, appellee.

Before SPAETH, President Judge, and MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by appellant, Sears, Roebuck & Company, from an order of the trial court which denied appellant's "PETITION TO OPEN DEFAULT JUDGMENT". We must reverse and remand for the reasons herein stated.

The dispute in this case arose initially from a complaint in assumpsit and trespass which was filed on February 10, 1981, by appellee-plaintiff, Blanche Steinberg, against appellant-defendant, Sears, Roebuck & Company, and appellee-defendant, Duralite Company, Incorporated. According to appellee-plaintiff's complaint, she "sat down in [a certain lawn or beach chair which was sold by Sears and manufactured by Duralite] ..., at which time the seat portion of said chair broke away, and the chair then and there tipped over and/or collapsed beneath Plaintiff, causing" the appellee-plaintiff to suffer "a fracture of the surgical neck" and other damages. "COMPLAINT IN TRESPASS AND ASSUMPSIT" at No. 10 and 13.

Then, on March 17, 1981, a default judgment was entered against Sears only. Three days later, appellant filed a Petition to Open Judgment, which was denied by the trial court. This appeal followed.

■■■ The standard of review which governs this case has been set forth in the following manner:

"It is fundamental that a petition to open a default judgment is an appeal to the court's equitable powers and, absent a clear abuse of discretion, the court's decision will not be disturbed. *McCoy v. Public Acceptance Corp.*, 451 Pa. 495, 305 A.2d 698 (1973); *Pappas v. Stefan*, 451 Pa. 354, 304 A.2d 143 (1973); *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971); *Hersch v. Clapper*, 232 Pa.Super. 550, 335 A.2d 738 (1975). Moreover, it is equally well-settled that in an assumpsit action a petition to open should not be granted unless three conditions coalesce: (1) the petition has been filed promptly; (2) the default is reasonably explained; and (3) a meritorious defense is shown. *Ruczynski v. Jesray Const. Corp.*, 457 Pa. 510, 326 A.2d 326 (1974); *McCoy v. Public Acceptance Corp., supra; Jost v. Phoenixville Area School Dist.*, 237 Pa.Super. 153, 346 A.2d 333 (1975)."

*Ecumenical Enterprises, Inc. v. Nadco Construction*, 253 Pa.Super. 386, 390–92, 385 A.2d 392, 394–5 (1978).

■■■ Additionally, we have said a meritorious defense must be shown in a trespass action only when the equities are not otherwise clear. *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971); *Sines v. Packer*, 316 Pa.Super. 500, 503, 463 A.2d 475, 477 (1983). Applying these standards to the instant case, this Court concludes that the trial court abused its discretion.

With respect to the first element, the timeliness of the petition to open, the parties do not dispute, and we have no doubt that the petition was timely since it was filed only three days after the default judgment was taken. *See Main Line Abstract Co. v. Penn Title Insurance Co.*, 282

Pa.Super. 545, 423 A.2d 379 (1980) (five days after default was taken was timely).

When analyzing the second element, the trial court stated the following:

"In the instant case, plaintiff's Complaint in Trespass and Assumpsit was served upon Sears on February 13, 1981. A default occurred on March 5, 1981, when no entry of appearance or responsive pleading was filed. Pursuant to Pa.R.C.P. 237.1, plaintiff, by notice dated March 6, 1981, advised Sears of her intention to take a default. Despite said notice, an entry of appearance or responsive pleading was not filed. A default was then taken on March 17, 1981.

The crux of the defendant's Petition to Open is that there exist inherent delays in processing a Complaint through a complicated corporate structure such as the Sears, Roebuck Company, and because of such inherent delays, the twenty day period which is provided by the Pennsylvania Rules of Civil Procedure for answering a Complaint, is not practical. *Defendant's petition cites the step-by-step process by which the Complaint and Rule 237.1 notice was transferred through the various offices and agents of Sears before arriving in the hands of counsel.*

\* \* \* \* \* \*

Here, *the failure to enter an appearance or file an Answer cannot be excused merely because of the cumbersome and complicated structure the defendant itself has created for processing such complaints.* This Court cannot elevate the defendant to a special status on its own initiative. To do so, would be a clear abuse of discretion and would infringe on the function of the Legislature. Thus, the second factor of the three prong test has not been met." Trial Court Opinion at 1–2. (Emphasis added).

According to appellant, however, "Sears believed that a tender of defense had been accepted by its co-defendant in this litigation and that its interests were being protected by

that co-defendant. Therefore, appellant did not seek to retain independent legal counsel until after the default had been taken, and it was clear its interests were not being served." Brief for Appellant at 9.

Appellee argues that this contention "has not been raised by Appellant, and it is, therefore, waived." Brief for Appellee-Plaintiff at 16 n. 6. We cannot agree.

In appellant's petition to open judgment, appellant raised the issue in the following manner:

"25. Plaintiff's counsel never served the Rule 237.1 notice directed to Sears or the papers requesting a Default Judgment on counsel for Duralite Co., in violation of Rule 233(c). The Plaintiff's counsel knew of Mr. Bogdanoff's [Duralite's Attorney] entry of appearance on or about March 6, 1981.

26. *If Plaintiff had complied with Rule 233(c), Duralite's counsel would have been able to take action to protect Sears by entering an appearance and by filing an Answer.* Defense Counsel could have taken such a step because of the prior contact between the Defendants. Therefore, Plaintiff's failure to comply with Rule 233(c) prejudiced Defendant Sear's substantive rights. If Plaintiff is going to demand literal compliance with the Rules by Defendant Sears, then the Plaintiff should itself be held to the same standard."

"PETITION TO OPEN JUDGMENT" at No. 25–26. (Emphasis added).

Appellee—co-defendant, Duralite Company, also states the following:

"[P]laintiff was obligated to serve Duralite with a copy of the Rule 237.1 notice addressed to Sears. In the absence of an entry of appearance for Duralite, plaintiff was obligated to serve Duralite with this copy by mail. Plaintiff has admitted that she did not serve Duralite with a copy of the notice directed to Sears. The failure to serve Duralite, to whom the defense of Sears had been tendered, deprived Duralite of the knowledge, required by the rules, that prompt action was needed to protect Sears.

If the notice had been given as required, Duralite would have taken action to obtain an extension for Sears or otherwise tried to prevent entry of the default judgment through its Philadelphia counsel." Brief for Appellee-Duralite at 9.

Appellee-plaintiff concedes that a copy of the notice was not sent to Duralite's *counsel.* However, appellee-plaintiff makes no mention of whether such a notice was sent to the company, Duralite. Appellee frames the argument in the following manner:

"25. It is admitted that the Rule 237.1 Notice directed to Sears was not sent to counsel for Duralite. It is denied that the same is a violation of Rule 233(c).

The Rule 237.1 Notice was mailed to Defendant, Sears, on March 6, 1981 *before* Plaintiff's counsel knew of Mr. Bogdanoff's appearance.

Rule 233(c) does not direct that copies of legal papers, etc., which have been served on party 'x' also be served on party 'y' *ab initio,* when party 'y's' entry of appearance is served subsequent to the service of the legal paper in question on party 'x'.

26. Denied. It is specifically denied that Defendant Sear's rights were affected by the fact that Duralite's counsel did not receive a copy of the 237.1 notice directed to Defendant, Duralite, or that Plaintiff did not literally comply with the Rules. See Answer to paragraph 25 above.

Further, it is specifically denied that the alleged but non-existent violation of Rule 233(c) would have prompted Duralite's counsel to take action to protect Sears. The entry of appearance and jury demand received by Plaintiff's counsel on March 7, 1981, was specifically for Defendant, Duralite, only. See Exhibit 'B.' " (Emphasis in original)

"PLAINTIFF"S ANSWER TO DEFENDANT, SEARS, ROEBUCK AND COMPANY'S PETITION TO OPEN DEFAULT JUDGMENT"

Thus, appellee-plaintiff contends that her failure to send the Rule 237.1 notice is not pivotal because Duralite's *counsel,* party "y's" attorney, did not enter an appearance until March 7, 1981, which was after the notice was sent to Sears, party "x". In any event, the argument goes, appellant was not prejudiced because counsel for Duralite entered an appearance for Duralite only.

■ To begin with, we have concluded that appellee's failure to send Duralite notice of her intent to enter a default judgment against Sears constitutes a violation of our rules of civil procedure.

In pertinent part, Rule 237.1 provides:

**"Rule 237.1. Notice of Praecipe for Entry of Default Judgment**

(a) No judgment by default shall be entered by the prothonotary unless the praecipe for entry includes a certification that a written *notice* of intention to file the praecipe was mailed or delivered to the party *against whom judgment is to be entered and to his attorney of record, if any, after the default occurred and at least ten days prior to the date of the filing of the praecipe.* If a written agreement for an extension of time specifies a time within which the required action must be taken and a default occurs thereafter, judgment by default may be entered by the prothonotary without prior notice under this rule. A copy of the notice or agreement shall be attached to the praecipe." (Emphasis added).

This rule also must be examined in conjunction with another rule, Pa.R.C.P. 233 which provides:

**"Rule 233. Service. Legal Papers other than Writs and Pleadings**

(a) *All legal papers, except writs and pleadings, to be served upon a party under any Rule of Civil Procedure including but not limited to motions, petitions, answers thereto, rules, orders,* **notices**, interrogatories and answers thereto, shall be served by leaving a copy for or mailing a copy to him *at the address of the party or his*

*attorney of record* endorsed on an appearance or prior pleading of the party, but if there is no such endorsement then

(1) within the county in which the action is pending by leaving a copy for or mailing a copy to him at the residence or place of business of the party;

(2) outside the county in which the action is pending, whether or not within the Commonwealth, by

(a) having a competent adult hand a copy to the person to be served; or

(b) leaving a copy at or mailing a copy by registered mail to the last known address of the party to be served; or

(c) if no address is known, publication in such manner as the court by local rule or special order shall direct.

*Note:* Writs and complaints used as process are served under Rule 1009. Pleadings generally are served under Rule 1027.

(b) Whenever an affidavit of service is filed it shall state the time, place and manner of service with sufficient particularity to enable the court to determine whether proper service has been made.

(c) **A copy of every legal paper served upon a party under Subdivision (a) above shall be served upon ever [sic] other party to the action.**" (Emphasis added).

In a recent case, we applied Rule 233 and commented in the following manner:

"*Research has disclosed no appellate cases dealing with a failure to comply with Pa.R.Civ.P. 233(a).* The rule, being straight-forward, has evidently not been the source of controversy. However, an addition to Rule 233 has generated one instructive case. *Rule 233(c) requires that* **all** *parties to a suit be served with all papers that must be served under subsection (a). Where such service was not made on another party to the suit the order pursuant to those papers was declared invalid. Falco v. Insurance Co. of North America,* 72 Pa.D. &

C.2d 436 (1975). If an order is rendered invalid through the failure of one of the parties to a suit receiving service, then we may fairly extrapolate the same result when the only opposing party in a suit does not receive service." (Emphasis added).

*Pflugh v. Pflugh,* 311 Pa.Super. 221, 226, 457 A.2d 575, 577 (1983).

The case of *Falco v. Insurance Co. of North America, supra,* provides some insight into the meaning of Rule 233. In *Falco,* the plaintiffs, Rosco and Gloria Falco, sued the defendant, the Insurance Company of North America, in order to recover the insurance proceeds because the Falcos' business had been destroyed by fire. The Allentown Bar and Restaurant Supply, Inc. filed a petition to intervene as a plaintiff and mortgagee of certain personal property which had been destroyed in the fire. This petition was granted. A trial was held, and a verdict was entered in favor of the Falcos. In announcing the verdict, the court ordered part of the insurance proceeds to be held in escrow until the claims of judgment creditors, as well as the claim of the Allentown Bar and Restaurant Supply, Inc., could be resolved.

Subsequently, a judgment creditor, William Shannon, served a rule to show cause why a portion of the escrow fund should not be paid to him. A copy of this rule, however, was served *only* on the clerk of the courts, who was trustee of the fund. The rule was made absolute and the court ordered the monies to be paid to Shannon out of the fund and consolidated Shannon's claim with the Falcos' suit against the insurance company.

Another judgment creditor, Easton National Bank and Trust Company, also filed a petition to seek partial distribution of the funds because the Falcos assigned the funds to the bank. This petition was served on all of the parties. The supplier, Allentown Bar and Restaurant Supply, Inc., filed an answer alleging its priority to the funds. Then the supply company filed an action in assumpsit against the Falcos and against the insurance company. A default judg-

ment was entered against the Falcos. However, the insurance company filed an answer to the complaint.

The scenario continues with a petition for partial distribution which was filed by Wilbert Horvath and William Flick, mortgagees of the real estate which was damaged in the fire. A petition also was filed by the supply company and a consolidated hearing was held where the petitioners learned for the first time of the distribution to Shannon.

The Court of Common Pleas of Northampton County held that the "rule to distribute the $13,051.06 to Shannon, which was made absolute, should have been served on *all the parties* to this action." *Id.* at 440. (Emphasis added). The court continued with its discussion stating the following:

> "The problem with this entire chain of events was that Shannon did not, at any time, give any sort of notice to any of the other parties engaged in this dispute. See Pa.R.C.P. 233(c)."

*Id.* at 441. Accordingly, the court *inter alia* ordered the monies which had been paid to Shannon to be returned to the clerk.

Similarly, we find that appellee-plaintiff erred in not sending a copy of her notice of intent to enter a default judgment against Sears to Duralite in accordance with Pa.R.C.P. 233(c).

This factor is relevant because appellee contends that appellant-Sears has not been prejudiced by her failure to comply with Pa.R.C.P. 233(c). The uncontradicted testimony which was contained in the depositions and the pleadings establishes the following facts:

On February 13, 1981, at 8:45 a.m., appellant's complaint in assumpsit and trespass was received by Dorothy Staiger, a secretary in the Security Department at the Philadelphia Catalog Distribution Center in Philadelphia, Pennsylvania. As part of her duties, Staiger logged the legal documents she received and sent the complaint that day to Thomas J. Enright "in a brown intra-company envelope". Deposition of Staiger, 5/13/81, at 5. Enright, the supervisor of the claims department in St. Davids, Pennsylvania, received the complaint on Monday, February 16, 1981, and as part of

"our custom, on the same day I sent it to our Law Department in Chicago" via first-class mail. Deposition of Enright, 5/13/81, at 10. The complaint was received in Chicago not later than February 23, 1981.[1] Anthony Boone, corporate counsel in Sears' Chicago office, contacted the representative from Duralite by telephone on February 23, 1981, advising Mr. Zakin, the company representative, of the complaint his office had received and on that same date the following letter was sent to Duralite:

"February 23, 1981

Duralite Company, Inc.
No. 2 Barbour Ave.
Paasaic, N.J. 07055
Attention: Mr. Irving Zakin

PHILADELPHIA COUNTY COURT OF COMMON PLEAS

| Blanche Syeinberg [sic], Plaintiff | ) ) | Case No. 1591 |
|---|---|---|
| —vs— | ) | |
| Sears, Roebuck and Co., and Duralite Company Inc., Defendants | ) ) ) | |

Dear Mr. Zakin:

Pursuant to our telephone conversation of February 23, 1981 attached hereto is a Summons and Complaint [sic] served on Sears, Roebuck and Co. Service of the Summons and Complaint was accomplished on February 20, 1981 and Sears Answer or Appearance is due 20 days thereafter. I have caculated [sic] that the Answer is due on March 12, 1981.[2] Based on the allegations contained in Plaintiff's Complaint, Sears is tendering the attached complaint to Duralite Company, Inc. and respectfully requests that Duralite indemnify, defend and hold Sears

1. Appellant's petition to open default judgment states that the complaint was received in Chicago on February 20, 1981. Other testimony indicated that it was received either on the 20th, but in any event no later than February 23, 1981. Deposition of Enright, 5/13/81, at 11 and Deposition of Boone, 9/2/81, at 5–6.

2. This date was erroneous since the complaint was served on February 13, 1981, and 20 days from that date was March 5, 1981 and not March 12, 1981. According to Attorney Boone, "the letter is a form letter and the date was picked up by the secretary." Deposition of Boone, 9/2/81, at 32.

harmless in accordance with our buying agreement. As of this date, we have not retained local counsel in this matter. I trust that you will obtain counsel to represent both Sears, Roebuck and Co., and Duralite Company, Inc. Pursuant to our telephone conversation of today I fully expect that you will advise us as to your position relative to our requests for you to accept our tender of defense. Please acknowledge receipt of the attached and indicate Duralite's willingness to indemnify, defend and hold Sears harmless in the above-captioned. In addition, please indicate the law firm engaged to represent Sears and Duralites interest in this matter. I am also requesting that Sears, Roebuck and Co., be provided with copies of all relevant pleadings and correspondence. .

Thank you in advance for your cooperation relevant to this matter.

> Very truly yours,
> SEARS, ROEBUCK AND CO.
> Anthony Boone, Attorney
> Product Liability Section
> Department 766

AB: jlz"

Boone Exhibit # 1.

This letter was received by Duralite and routed internally from Zakin to Ken Spiecker, who is responsible for handling customer complaints, through the intra-office mail on March 3, 1981. Deposition of Spiecker, 5/13/81, at 2–5. Previously, Duralite had received a copy of appellee-plaintiff's complaint directly from appellee's attorney; however, that complaint was forwarded to the insurance broker. Speicker spoke with Zakin upon receipt of the letter and then drafted the following letter to be sent to the broker who would then forward it to the carrier:

> "6 March 1981

Hamond Brokerage
2325 New Hyde Park Rd.
Lake Success, N.Y. 11042

Attn: Hy Albert
    Re: Blanche Steinberg
    D–A: 7/3/79

Dear Hy:

Enclosed herewith is a request to honor our hold-harmless agreement with Sears, tendered by Mr. Boone, which is self-explanatory.

This has been discussed by the undersigned with Mr. Boone (Sears) and Mr. Edwards (Ambassador).

Please forward to Mr. Edwards.

        Yours truly,
        DURALITE COMPANY, INC.
        KENNETH SPIECKER
        Director
        Administrative Services

cc:  Mr. Zakin
     Mr. Weinstein
     Mr. Boone

KS/mo

Encl:"

Sears Exhibit # 4

According to the uncontradicted testimony, Spiecker had spoken to Mr. Edwards, the broker from the insurance company, on March 3, 1981. *Id.* at 7. Spiecker stated that he had "read him [Edwards] part of the content of the letter [from Boone] and indicated to him that I was forwarding the same to him in brokerage, and I wanted to make him aware of it because there were requirements for answering the service." *Id.* More specifically, Spiecker read to Edwards the part of Boone's letter which stated that the answer was due on March 12, 1981. *Id.* at 8.

With respect to whether Spiecker had discussed the Rule 237.1 notice with anyone, Spiecker commented:

"Q. Did you ever discuss with Mr. Edwards or with anyone else a Notice of Intent to Take Default with regard to Sears?

A. No.

Q. Do you know if anyone ever spoke to you about such a Notice?

A. I don't recall any discussions about such a Notice.

Q. What is the usual procedure of your company when you receive a Notice of a legal proceeding against Duralite?

A. *The Notice has to come to my office. I then take it and read it. I evaluate it to see what action seems to be necessary, and then I contact the appropriate party.*

Q. Incidentally, are you an attorney?

A. No.

Q. When you say 'contact the appropriate party,' whom do you mean by that?

A. *Well, my basic contact with our insurance carrier is through the broker. In some specific instances, we may contact both the broker and the insurance carrier. We also have private counsel, which are local attorneys, that can advise us in terms of technical matter and ramifications, and otherwise guide and direct us in the disposal of certain things.*

Q. What would you do with any legal documents that you receive? How would you process them after evaluating them?

MR. OXENBURG: I object to the relevancy in this case.

Could you be more specific?

BY MR. FELDBAUM:

Q. If you received a Complaint or Summons or Notice of Intent to Take Default, what would you do with such a document?

A. *Well, if it were well within the time limit for an Answer, I would mail it immediately with a cover letter to the broker. If there were a question in my mind about the time limit being relatively close, I would pursue it with a phone call.*

204

Q. Did you go through all your usual procedures in this case?

A. So far as I know, I did.

* * *

Q. When did you become aware of the identity of Duralite's counsel?

A. On March 4 or 5, 1981.

Q. So that was prior to your conversation with Mr. Boone?

A. I'm sorry. The conversation with Mr. Boone was March 3.

Q. Did you have any discussions with Mr. Edwards or anybody from Hamond Brokerage about the time limit as set forth in the first paragraph of Sears 3?

A. In discussing the letter itself, I am sure that it was discussed.

Q. What discussions did you have with Mr. Edwards at Ambassador about Ambassador's taking over Sears' defense in this case?

A. As I recall, it was a rather brief discussion. I simply pointed out that we had a request from Mr. Boone, and he indicated that he would evaluate it and handle it.

Q. When was that? Do you know?

A. I believe that was our conversation of March 3.

Q. Did you ever communicate again with anybody from Sears after receiving this letter marked as Sears 3?

A. Yes. I had at least two conversations with Mr. Boone.

Q. One was on March 3?

A. Yes, and I spoke to him on March 6, and I spoke to him on March 12.

Q. What was the nature of the conversation on March 12?

A. *That barring difficulties we would defend Sears if it was a straightforward products suit.*

Q. And from whom did you receive the authority to make that assertion to Mr. Boone?

A. I believe I spoke with Frank Hart, the Vice-President and General Manager of Duralite. However, to the best of my knowledge, I have that authority.

Q. I wasn't challenging your authority. I just wanted to know if it came from Ambassador.

A. As a matter of fact, I am reluctant to make a verbal commitment until our insurance carrier has examined the matter thoroughly along with whatever attorneys they use. I will not make legal commitments without an attorney's advice. I would not say my statement just now constitutes a legal commitment because I don't know what other commitments exist between Sears and Duralite.

Q. When you spoke to Mr. Boone on March 12, was it still your impression that Sears had not retained counsel to defend itself in this matter?

A. My recollection is that he did not retain counsel.

Q. Did you and Mr. Boone, when you had your discussion on March 12, discuss in any fashion the fact that according to this letter marked Sears 3 an Answer to the Complaint was due on March 12, 1981?

A. I don't believe that was discussed on that date.

Q. Did you ever receive a written or verbal communication from either Hamond Brokerage or Ambassador regarding this agreement to defend Sears?

A. I specifically discussed it with Mr. Edwards at Ambassador. I believe there is a reference to it.

Q. *Did you ever get a confirmation that they would, either in writing or verbally?*

A. *Yes, we did.*

Q. *When?*

A. *On March 20.*" Deposition of Spiecker, 5/13/81, at 9–10, 14–16.

■ From the scenario set forth above, we are unable to conclude that plaintiff's failure to comply with the Rule 233(c) was inconsequential.

To begin with, the language of the Rule is written in the alternative. That is, "all legal papers ... shall be served upon a party" by leaving a copy of the document at the address of either the party or the attorney of record. Pa.R.C.P. 233(a).

Additionally, appellant claims that it was prejudiced by Steinberg's noncompliance with the Rule because the attorney at Sears, Anthony Boone, did not see the notice until the "23rd or 24th of March," which was after the default had occurred. Deposition of Boone, 9/2/81, at 17. The supervisor of the claims department also stated in his deposition that the "Notice of Intent to Take Default" was received by him on March 20, 1981 from the Manager of the Customer Convenience Center whose internal memorandum indicated that he had not received any previous correspondence regarding this suit.[3] For some unexplained reason, there was a gap of fourteen days from the time the notice

3. The memorandum stated:

"SEARS, ROEBUCK AND CO.
INTERNAL CORRESPONDENCE

| TO | | Dept. or | | |
| --- | --- | --- | --- | --- |
| | Unit Eastern Territory | Unit No. 766E | | Name Mr. T. Enright |
| FROM | | Dept. or | | |
| | Unit Northeast | Unit No. 1004 | | Date March 17, 1981 |
| | | Re: Blanche Steinberg | | |

Dear Mr. Enright:

We have researched our files and found no previous correspondence on the attached.

S/ D.J. Kelly kw
D. J. Kelly
Manager
Customer Convenience Center

DJK:kw"

was received at a Sears location until March 20th when the notice was received by Enright.

The lower court made no findings of fact regarding whether appellee had failed to mail a copy of the Rule 237.1 notice to Duralite. Without this fact, "the court could not decide whether appellant had offered a reasonable explanation for its failure to defend the action. It was therefore the lower court's responsibility to make findings." *Brown v. The Great Atlantic & Pacific Tea Company*, 314 Pa.Super. 78, 80–1, 460 A.2d 773, 774 (1983).

We, however, need not remand in this case because no one disputes that fact and, if the trial court on remand were to find otherwise, we would set aside the finding because that finding "would not be supported by the record. *See, e.g., Lawner v. Engelbach*, 433 Pa. 311, 249 A.2d 295 (1969). *See generally Thompson v. Equitable Life Assurance Society*, 447 Pa. 271, 276, 290 A.2d 422, 424 (1972) (Appellate court may make its own findings of fact where 'record is clear'); *Innes v. Nanticoke City School District*, 342 Pa. 433, 20 A.2d 225 (1941) (same)." *Id.*, 314 Pa.Superior Ct. at 81, 460 A.2d at 775.

Accordingly, the penalty for appellee's failure to comply with Rule 233(c) prompts this Court to conclude under these circumstances that default judgment should be set aside. *Pflugh v. Pflugh, supra,* (where this Court held that the underlying order which was entered pursuant to the defective service was invalid).

Additionally, in this case, appellant had a reasonable explanation for failing to respond on time. Even if Attorney Boone harbored an erroneous impression that he had a verbal commitment "Duralite would accept Sears tender of defense in this matter without reservation," that explanation is reasonable under the circumstances. Deposition of Boone at 30, 31.

Again, the trial court made no findings concerning whether it believed Boone's version of what had happened. A representative of Duralite disagreed with Boone's interpre-

tation of the events and was of the impression that Duralite Company made no definite commitment to represent Sears as of March 6, 1981. However, Duralite does contend that "[e]ven if the belief of Sears is incorrect, the conduct of Sears in tendering the defense and relying upon their belief when coupled with follow-up efforts made by Sears demonstrates such diligence as to preclude entry of a default judgment." Brief for Appellee, Duralite, at 8.

Thus, we need not examine which of the factual versions is more credible, because the pivotal question is whether appellant's "failure to timely defend has been reasonably explained." *Ecumenical Enterprises, Inc. v. Nadco Construction,* 253 Pa.Super. at 394, 385 A.2d at 396.

Boone's deposition established the following:

"Prior to sending the letter out, I contacted the representative from Duralite by telephone on the 23rd of February.

Q   Could you tell me what representative of Duralite you contacted?

A   I believe his name was Mr. Zakin, Z–A–K–I–N.

Q   Do you know what capacity he has at Duralite?

A   I don't know his capacity, but he was the named representative contact for Sears, Roebuck and Co. on claims and lawsuits.

Q   Could you tell me what you said to Mr. Zakin during the course of your telephone conversation with him?

A   I advised him that we had received the lawsuit, that this was a lawsuit that involved a pending claim that his office previously had knowledge of, and that we were tendering it to Duralite; and that there were some problems in reference to the applicable time to respond and that's why I was called.

Q   Which problems regarding applicable time were you referring to?

A   In terms of answering the Complaint and I wanted to make sure that they would accept our tender of defense and that there would be no need for—

Q   What did Mr. Zakin say to you during that conversation?

A   *At the time he acknowledged the fact that there was a pending claim and that they would take care of it.*

Q   Do you recall whether he specifically said they would assume the defense?

A   *No. I think he used the terms they would take care of it or that they would see that the matter was taken care of, but not necessarily those words which you used."* (Emphasis added).  Deposition of Boone, 9/2/81, at 6–7.

On similar facts, this Court set aside a default judgment when the appellant-defendant, Ashbourne Country Club, had entered into a contract with Structures International, Inc. for the construction of an indoor tennis facility.  Appellee-plaintiff, Cherry Steel Corporation, became a subcontractor for a part of the job and entered into a contract with Structures International, Inc., the general contractor.  Appellee was not paid either by appellant or the contractor and as a result filed an intention to file a mechanic's lien on both parties.  The contractor and the club "agreed between themselves that the contractor's lawyers would defend the action." *Ashbourne Country Club v. Cherry Steel Corporation*, 227 Pa.Super. 433, 435, 323 A.2d 231, 232 (1974). Then appellee filed a mechanic's lien and complaint naming only appellant as a defendant.

The appellant explained that it had failed to file an answer on time because it and the contractor had

"agreed that the contractor's counsel would handle the defense and when only the appellant was served with the complaint *it was still of the impression that the contractor's counsel would handle the defense and that this shows a reasonable excuse for its one day delay in filing an answer." Id.* (Emphasis added).

We also conclude that the *Ashbourne* situation is apposite to the instant case, and that appellant's explanation that "the matter was taken care of", was reasonable since Sears was "of the impression that [Duralite's] counsel would

handle the defense." *Id. Accord Duffy v. Gerst,* 286 Pa.Super. 523, 533, 429 A.2d 645, 651 (1981) (where appellants believed because of representations made to them by their real estate agents and broker, that engaging an attorney was not necessary, the explanation for failing to file answer to the complaint was reasonable and a default judgment should not have been entered.).

Moreover, in the instant case, appellant's actions are not characteristic of a "[c]ase wherein failure to answer was a planned tactical decision." *Brown v. Great Atlantic & Pacific Tea Company,* 314 Pa.Super. at 82, 460 A.2d at 775. Rather, we find that this case is more closely akin to those cases where we accepted delay as reasonable "particularly since the litigant had taken all steps that he reasonably believed would result in the protection of his interests." *Lalumera v. Nazareth Hospital,* 310 Pa.Super. 401, 405, 456 A.2d 996, 998 (1983).

Additionally, the fact that both Duralite and Sears did not file an answer by March 12, 1981, the erroneous date stated in the letter from Sears, also is not dispositive in this case because as stated previously, appellee failed to advise Duralite in compliance with Pa.R.C.P. 233(c) that it had filed a notice of intent to take a default judgment against Sears whose request for representation Duralite was processing in accordance with its standard operating procedure.

In the past, we have said that " '[t]he rules are not primarily intended to provide the plaintiff with a means of gaining a judgment without the difficulties [which] arise from litigation.' " *Ecumenical Enterprises, Inc. v. Nadco Construction,* 253 Pa.Super. 386, 385 A.2d 395 (1978) (quoting *Moyer v. Americana Mobile Homes, Inc.,* 244 Pa.Super. 441, 445, 368 A.2d 802, 804 (1976).

In the instant case, appellee's failure to comply with the notice requirement embodied in Rule 233(c), the entering of a default judgment by appellee on the first day available pursuant to Rule 237.1, the serving of the complaint by appellee at a store different from the one in which the incident occurred, and the sequence of events which estab-

lished that Duralite and Sears were not dilatory in routing the various papers throughout the corporate network, are "equitable considerations in the factual posture of the case which require that we grant to a defendant against whom the judgment has been entered an opportunity to have his 'day in court' and to have the cause decided upon the merits. In so doing, we act as a court of conscience." *Ecumenical Enterprises, Inc. v. Nadco Construction*, 253 Pa.Super. at 394, 395 A.2d at 396 (quoting *Kraynick v. Hertz*, 443 Pa. 105, 111, 277 A.2d 144, 147 (1971)). In this instance, the record is replete with "equitable considerations which impress the court with the need for relief." *Id.*

With respect to whether a meritorious defense exists to support the complaint, we note that appellee's complaint is an action in both trespass and assumpsit.

We need not reiterate at this point the equities balancing in favor of opening the default judgment which have been set forth, *supra,* except to state that insofar as appellee-plaintiff has filed a trespass action, a meritorious defense need not be shown in such a case. *See Sines v. Packer, supra.*

According to appellant's "PETITION TO OPEN DE-FAULT JUDGMENT", a meritorious defense exists in assumpsit because "[t]here was no sale of the clair [sic] to the Plaintiff. Therefore, there can be no cause of action in assumpsit." *Id.* at Allegation No. 21.

In our view, there is no doubt that appellant has alleged a meritorious defense to the assumpsit action. 3 P.L.E. Assumpsit § 4 at 321. ("a party may not sue in assumpsit for a mere tort when there is no contract, express or implied".) (Footnote omitted).

Because the trial court abused its discretion in concluding that the appellant's explanation was not reasonably explained, we must vacate that judgment and remand for trial.

Order vacated and case remanded for trial.

Jurisdiction is relinquished.