**HIGBIE ROTH CONSTRUCTION COMPANY, Appellant,**

v.

**HOUSTON SHELL & CONCRETE
and Bullet Concrete Materials,
Inc., Appellees.**

No. 01–98–00316–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 26, 1999.

Rehearing Overruled Oct. 7, 1999.

C. Henry Kollenberg, Jr., Houston, for Appellant.

Mark R. Lapidus, Houston, for Appellee.

Panel consists of Justices COHEN, HEDGES, and TAFT.

## OPINION

TIM TAFT, Justice.

Appellant, Higbie Roth Construction Company, asks us to set aside a summary judgment in favor of appellees, Houston Shell & Concrete, and Bullet Concrete Materials, Inc., and to hold that Higbie's claims of "wrongful increase in workers' compensation premiums" constitute actionable tort in Texas. We affirm.

### Facts and Procedural History

Higbie is a construction company that ordered cement from Houston Shell for delivery to a Higbie construction site. Houston Shell subcontracted with Bullet to deliver the cement. Elmer Ramos, a Higbie employee, was injured as the cement was being unloaded at the site. Higbie attributes Ramos's injury to the negligence of a Bullet employee.

Higbie sued Houston Shell and Bullet in May 1995. Higbie's petition alleged that because of Houston Shell's and Bullet's actions, Higbie

> became liable for workers' compensation payments which were paid by its carrier and charged as a loss on the account of [Higbie]. [Houston Shell and Bullet] are liable for such a loss but have failed

to deal appropriately with [Higbie's] workers' compensation carrier and thus the charge remains against [Higbie's] account.

With respect to damages, Higbie claimed

> [T]hat if [Houston Shell and Bullet] fail to resolve this matter prior to renewal of [Higbie's] workers' compensation insurance in October, 1995, [Higbie's] rates will be irrevocably increased and [Higbie] may lose coverage altogether. [Higbie] will undoubtedly suffer significant damage by way of additional expense and lost profit and may even be unable to continue in business, suffering additional damage.

Higbie sought recovery for these alleged economic losses through negligence and the Texas Deceptive Trade Practices Act (DTPA), including knowing violations of the latter.[1]

Two years later, before significant discovery had occurred, Houston Shell and Bullet sought summary judgment "on the pleadings alone" and without supporting evidence, on the grounds that Higbie had failed to state a cognizable theory of recovery.[2] Concerning Higbie's negligence claims, Houston Shell and Bullet challenged any duty owed to Higbie to prevent tortious increase of workers' compensation insurance premiums, claiming they could not legally foresee these increases. Their motion challenged the DTPA claims by disputing Higbie's ability to demonstrate a deceptive practice by Houston Shell and Bullet as the producing cause of Higbie's claimed economic losses. The motion also relied on several out-of-state decisions that had rejected attempts by employers to recover damages, in the form of increased workers' compensation premiums, from third parties whose negligence caused or may have caused the worker's injuries.

In response, Higbie argued the trial court was compelled to assume the facts

---

1. Higbie's DTPA claims are against Houston Shell only.

2. This case predates Tex.R. Civ. P. 166a(i), which authorized "no evidence" summary judgments and became effective on September 1, 1997.

supported recovery because Houston Shell and Bullet did not offer any evidence in support of their motion. Higbie also challenged the sister-state decisions Houston Shell and Bullet relied on and countered with an Ohio decision recognizing recovery. Houston Shell and Bullet replied on the merits and reasserted the propriety of summary judgment when the substantive law precludes a plaintiff's stated cause of action.

Higbie's issues on appeal are grounded in the lack of special exceptions to its petition and the lack of evidence offered to support Houston Shell's and Bullet's motion for summary judgment. According to Higbie, these mandate that we reverse the summary judgment and thus validate its claims for negligence and violations of the DTPA.

## Standard of Review

■ As movants for summary judgment, Houston Shell and Bullet had to negate the existence of genuine issues of material fact and establish their right to judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). A defendant can prevail by summary judgment by establishing that the law does not recognize the cause of action for which the plaintiff seeks to recover. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497–98 (Tex.1995).

Higbie argues that because Houston Shell and Bullet obtained summary judgment on the pleadings without filing special exceptions, we are precluded from determining whether the pleadings state a cause of action. We disagree.

### A. Attack on Cause of Action Proper Without Special Exceptions

■ A summary judgment should not be premised on a pleading deficiency curable by amendment. *In re B.I.V.*, 870 S.W.2d 12, 13–14 (Tex.1994). Accordingly, the special exceptions procedure, and not summary judgment, is the proper means to test the adequacy of the other parties'

pleadings. *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9–10 (Tex.1974).

■ Houston Shell and Bullet should have attacked Higbie's pleadings by special exceptions instead of by motion for summary judgment. *See Kassen v. Hatley*, 887 S.W.2d 4, 13–14 n. 10 (Tex.1994). But Higbie did not object, in the trial court, to Houston Shell's and Bullet's reliance on the summary judgment procedure. Moreover, it was abundantly clear, from their motion, Higbie's response, and their reply, that Houston Shell and Bullet sought summary judgment because no cause of action existed. Houston Shell's and Bullet's reliance on the pleadings triggered a responsibility in Higbie to request leave to amend, to the extent its pleading defects were curable by amendment. *See Perser v. City of Arlington*, 738 S.W.2d 783, 784 (Tex.App.—Fort Worth 1987, writ denied). By not requesting an opportunity to amend its pleadings to state a cognizable cause of action, Higbie waived reliance on any complaint premised on the absence of special exceptions. *Kassen*, 887 S.W.2d at 13 n. 10; *see San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex.1990); *Perser*, 738 S.W.2d at 784; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676 (Tex.1979); *Summers v. Fort Crockett Hotel, Ltd.*, 902 S.W.2d 20, 27 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Perser*, 738 S.W.2d at 784; Tex.R. Civ. P. 166a(c).

### B. Only Facts Presumed True on De Novo Review

■ Because Houston Shell and Bullet offered no evidence and relied solely on Higbie's pleadings, we examine the pleadings de novo to determine whether they state a cognizable cause of action. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Kassen*, 887 S.W.2d at 14. In conducting de novo review, we, like the trial court, take all the allegations, facts, and inferences from the pleadings as true, and view them in the light most favorable

to Higbie. *See Natividad,* 875 S.W.2d at 699. Consistent with summary judgment review, analysis of the pleading determines only whether the petition alleges facts for the jury to decide, not the determinations the jury would reach from those facts. Neither this Court nor the trial court assumes that legal conclusions stated in pleadings are true.[3]

Accordingly, while Houston Shell's and Bullet's reliance on Higbie's pleadings compels us to construe Higbie's pleadings broadly and indulge all inferences in its favor in reviewing the summary judgment, we are not required to accept, as true, Higbie's legal conclusions that: Houston Shell's conduct violated the DTPA; that this entitled Higbie to recover damages that "clearly flowed from the violation"; or that the damages "were clearly contemplated by all parties as the exact damages which would flow from the DTPA violation."

### No Negligence Cause of Action

 To recover for negligence, Higbie had to allege facts supporting a negligence claim. Negligence consists of three elements: a duty owed to the plaintiff; which the defendant has breached, resulting in injury; and damages proximately resulting from the breach. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994).

The injuries claimed here are: a charge to Higbie's workers' compensation account for the injury to Ramos; an allegedly resulting increase in workers' compensation premiums; the possibilities of irrevocable increases and total loss of coverage; and additional expenses, lost profits, and economic losses. Construing these claimed injuries broadly, the cognizable damages alleged are increased workers' compensation premiums.

 To recover for increased workers' compensation premiums from Houston Shell and Bullet, Higbie must show a duty to prevent that increase. Duty under a set of facts is a question of law for the court. *Bird,* 868 S.W.2d at 769. In determining whether to impose a duty, courts consider the risk, foreseeability, and likelihood of injury to the plaintiff, and weigh those factors against the social utility of the defendant's conduct, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant. *Id.* Foreseeability of harm is a primary factor in evaluating whether a duty is owed. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

Higbie's pleadings, when construed broadly and after indulging all inferences in Higbie's favor, do not support a claim against Houston Shell and Bullet for wrongful increase in workers' compensation premiums arising out of their allegedly negligent injury of Ramos. The negligence cause of action fails because the injuries for which Higbie seeks recovery, allegedly increased workers' compensation premiums, were not foreseeable by Houston Shell and Bullet as a matter of law. In rejecting Higbie's claims as legally cognizable negligence, we find the reasoning of a Pennsylvania court of appeals particularly persuasive. *Whirley Indus., Inc. v. Segal,* 316 Pa.Super. 75, 462 A.2d 800 (1983).

In *Whirley Industries,* the Pennsylvania Superior Court concluded that third parties whose negligence may have caused injury to a worker did not owe a duty to the worker's employer to foresee that in-

---

3. *See Fain v. Great Spring Waters of America, Inc.,* 973 S.W.2d 327, 329, *aff'd sub nom. Sipriano v. Great Spring Waters of America,* 42 Tex. Sup.Ct. J. 629 (May 6, 1999); *see also Brown v. Peters,* 127 Tex. 300, 94 S.W.2d 129, 130–31 (1936) (clarifying that pleadings state *"facts* constituting the plaintiff's cause of action or the defendant's ground of defense," in the form of allegations made to present "the issues *to be tried and determined."*) (emphasis added and internal quotations omitted); *Wood Truck Leasing, Inc. v. American Auto. Ins. Co.,* 526 S.W.2d 223, 224 (Tex.Civ.App.— San Antonio 1975, no writ) (For purposes of motion for summary judgment directed to the pleadings, *"factual* allegations of the petition are taken as true.") (emphasis added).

creased insurance premiums would result from compensating the worker for the third parties' negligence. 316 Pa.Super. at 82, 462 A.2d at 804. The Pennsylvania Superior Court concluded that a third party cannot reasonably foresee that its conduct would cause increased premiums because premium rates result from many concurring factors, many of which are entirely unrelated to the third party's alleged negligence in injuring a particular worker. *Id.* These factors include the employer's prior loss experience and the internal financial practices of the particular insurance carrier. *Id.*

In rejecting any duty owed to Higbie to prevent alleged increases in workers' compensation premiums, we follow the majority of state and federal decisions that have addressed this and similar issues.[4] We decline Higbie's request to apply the reasoning of *Ledex, Inc. v. Heatbath Corp.,* 10 Ohio St.3d 126, 461 N.E.2d 1299 (1984). In *Ledex,* the Supreme Court of Ohio authorized employers to recover damages for increased workers' compensation premiums from third parties whose negligence caused the injuries, despite a statute that rendered void all contracts to indemnify or insure employers against loss or liability for compensation paid to workers for on-the-job injuries. 10 Ohio St.3d at 131, 461 N.E.2d at 1304. But as the Ohio Supreme Court clarified four years later in *Cincinnati Bell Tel. Co. v. Straley,* a contract between the third party and the employer is an absolute prerequisite to recovery under the *Ledex* rule. 40 Ohio St.3d 372, 381–82, 533 N.E.2d 764, 772 (1988). The *Ledex* and *Cincinnati Bell* remedy lies only in contract and only when "a third party negligently injures an employer's employee *and such injury is a direct result of a breach of contract*" between the third party and the employer. *Id.* (emphasis added). Higbie seeks recovery only in tort: there is no claim for breach of contract. *Ledex,* as clarified by *Cincinnati Bell,* offers no support whatsoever for imposing tort liability on Houston Shell and Bullet.

We conclude that the trial court properly rendered summary judgment in favor of Houston Shell and Bullet on Higbie's negligence cause of action.

### No DTPA Cause of Action against Houston Shell

To maintain its DTPA cause of action against Houston Shell, Higbie's pleadings had to allege: that it is a consumer under the DTPA, with respect to its claim against Houston Shell; that Houston Shell committed a false, misleading, or deceptive act under section 17.46(b) of the DTPA, or breached an express or implied warranty, or engaged in an unconscionable action or course of action; and that Houston Shell's conduct was the producing cause of Higbie's actual damages. *See Brown v. Bank of Galveston,* 963 S.W.2d 511, 513 (Tex.1998); Tex. Bus. & Com.Code Ann. § 17.50(a) (Vernon Supp.1999).

In addition to the acts attributed to Houston Shell and Bullet in the preliminary paragraphs of Higbie's petition, the DTPA portion states:

> [Higbie] is a consumer as that term is used under the Texas Deceptive Trade Practices Act. The conduct of [Houston Shell] violates the Texas Deceptive

---

4. *See, e.g., RK Constr., Inc. v. Fusco Corp.,* 231 Conn. 381, 386, 650 A.2d 153, 156 (1994) (denying negligence recovery against third party, on grounds that no duty owed, despite conclusory allegations of foreseeability of increased premiums and lost dividends); *Northern States Contracting Co. v. Oakes,* 191 Minn. 88, 253 N.W. 371, 372 (1934) (rejecting negligence recovery against third party on grounds that damages were too remote and indirect); *Erie Castings Co. v. Grinding Supply, Inc.,* 736 F.2d 99, 103–04 (3rd Cir.1984) (rejecting any recovery against third parties as inconsistent with the exclusive remedy provisions of the Pennsylvania workers' compensation statute); *Unique Paint Co. v. Wm. F. Newman Co.,* 201 Ga.App. 463, 411 S.E.2d 352, 353 (1991) (denying negligence or statutorily based recovery for increased premiums); *Fischl v. Paller & Goldstein,* 231 Cal.App.3d 1299, 1303, 282 Cal.Rptr. 802, 804 (1991) (same).

Trade Practices Act and as such [Higbie] is entitled to recover its actual damages. The conduct of [Houston Shell] was done knowingly and as such [Higbie] is entitled to additional damages under the Deceptive Trade Practices Act. [Higbie] is additionally entitled to recover its attorney's fees.[5]

To constitute the producing cause of Higbie's injuries, Houston Shell's conduct had to be both a cause-in-fact and a "substantial factor" in causing injury to Higbie. *Brown*, 963 S.W.2d at 514; *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995). A producing cause is an efficient, exciting, or contributing cause, which, in the natural sequence of events, produces injuries or damages to the plaintiff. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex.1995). Thus, Higbie had to show that its damages would not have occurred but for Houston's conduct. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995). Damages that are too remote, too uncertain, or purely conjectural are not recoverable. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex.1997).

After construing Higbie's allegations broadly and indulging all inferences in favor of Higbie, we conclude that its pleadings stated claims under section 17.46(b) of the DTPA or otherwise actionable under the DTPA. We have also assumed, but have not decided, that Higbie is a consumer as to Houston Shell for this claim, as stated in the petition. We nevertheless conclude, from Higbie's DTPA allegations and the remainder of the petition, that Higbie has not stated a claim for an actionable injury by Houston Shell under the "producing cause" standard.

Higbie seeks compensation for future damages, possible loss of coverage, and possible additional damages. These damages are conjectural, uncertain, and therefore not actionable under the DTPA. *Arthur Andersen*, 945 S.W.2d at 816. But Higbie's pleadings would fail even if they were to claim an actual increase in insurance premiums. In reaching this conclusion, we once again find the reasoning of *Whirley Industries, Inc. v. Segal* persuasive. Given the multiplicity of factors in an insurer's decision to raise insurance premiums, Higbie has not alleged cognizable damages. *See* 316 Pa.Super. at 81–82, 462 A.2d at 803–04; *Arthur Andersen*, 945 S.W.2d at 816. Higbie's damages are thus too remote to be actionable under the DTPA. *Id.; Union Pump Co.*, 898 S.W.2d at 777; *Prudential Ins. Co. of Am.*, 896 S.W.2d at 161.

We conclude that summary judgment was proper on Higbie's DTPA cause of action against Houston Shell.

### Conclusion

We affirm the judgment of the trial court.

---

5. As noted above, we need not assume the truth of Higbie's conclusory allegation that

Houston Shell violated the DTPA.