Affirmed and Opinion filed December 12, 2002









Affirmed and Opinion filed December 12, 2002.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00279-CV

____________

 

ROSALIE DAHL, AS NEXT FRIEND OF TINA
DAHL AND TODD DAHL, MINOR CHILDREN, BENEFICIARIES OF THE VICTORIA KOCI MALCOLM
ESTATE TRUST, ROSALIE DAHL, BENEFICIARY OF THE VICTORIA KOCI MALCOLM ESTATE
TRUST, and TED E. DAHL, AS TRUSTEE OF THE VICTORIA KOCI MALCOLM ESTATE TRUST, Appellants

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County Civil Court at
Law No. 2

Harris County, Texas

Trial Court Cause No. 747,635

 



 

O P I N I O N








Appellee, the State of Texas, initiated eminent domain
proceedings for a whole taking of a 1.004 acre tract of land and any
improvements on the tract.  The land had
previously been conveyed to Leonidas Vezos by the Victoria Koci Malcolm Estate
Trust, with the Trust retaining the improvements and two purchase-money
mortgages.  In the eminent domain
proceedings, the State joined appellant Ted E. Dahl, Trustee of the Trust,
along with Vezos and other parties. 

The Trust and appellant Rosalie Dahl (“appellants”)
counterclaimed against the State, alleging inverse condemnation of their
superior right and interest to the money Vezos owed under the promissory notes,
which were secured by deeds of trust to the real property the State was
condemning.[1]  Asserting sovereign immunity, the State moved
to dismiss this counterclaim for want of jurisdiction.  The trial court granted the State=s motion and dismissed appellants= inverse condemnation claim with
prejudice.

The principal issue in this interlocutory appeal is the
following:  when the State, in a
statutory eminent domain proceeding, condemns a whole tract of land that
secures a purchase-money mortgage note, does the mortgagee (the holder of the
note) have a valid inverse condemnation claim for the balance remaining on the
note in excess of the condemnation award?[2]  We conclude he does not, and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 1998, the Trust sold two parcels of land to Vezos,
and the same day executed two deeds of trust and security agreements on the
respective tracts for the total amount of $611,060.  The Trust retained the existing improvements
on the property (described by the State as a house and a shed).  








On February 8, 2001, the State, by and through its
Transportation Commission, filed a petition for statutory condemnation of the
property.  The Trust, Vezos, and several
other entities were parties to the condemnation proceedings and were notified
of the Special Commissioners= hearing.  Dahl, as
Trustee, answered asserting the Trust=s ownership of the retained
improvements and the lien on the real property. 
The Trust sought damages for condemnation of the improvements and
compensation for the unpaid balance of the mortgage lien.

At the Special Commissioners= hearing on May 23, 2001, the
commissioners awarded $400,000 total damages for condemnation of the land and
improvements, if any.[3]  In early June, 2001, the Trust filed a motion
to withdraw funds from the registry of the court.  In mid-June, Dahl, as Trustee, filed
objections to the award, invoking the right to trial de novo by jury in
the county civil court at law.

In mid October, 2001, appellants filed their counterclaim
against the State and various other parties, alleging the State had taken their
purchase-money mortgage security interest by inverse condemnation.  Specifically, appellants asserted, “The
property taken was [appellants=] superior right and interest to the monies owed by Leonidas
Vezos pursuant to a promissory note and secured by a deed of trust regarding
the real property in question.@  Appellants further
alleged they were suing “to recover the taking of the balance due and owing on
the promissory note.”  Appellants
subsequently amended their counterclaim to allege the State “may not take the
property until the lien is paid in full.” 
The State answered with a general denial and a jury demand.








On February 12, 2002, the State filed a motion to dismiss
appellants= amended counterclaim for lack of
subject matter jurisdiction.  The State
alleged there could be no inverse condemnation because the State had initiated
statutory condemnation proceedings for a whole taking of the tract.  The State asserted sovereign immunity and
sought dismissal with prejudice.  On
February 18, appellants filed their response. 
They referred to the taking of “their note without compensation,” but
not to the State=s taking of improvements on the property.  There is nothing in the record to indicate
appellants sought to amend their pleadings to include taking of the
improvements in the inverse condemnation claim. 
On February 19, the trial court granted the State=s motion and dismissed appellants= counterclaim with prejudice.  On March 11, 2002, appellants filed this
interlocutory appeal challenging the dismissal.[4]

DISCUSSION

Appellants present nine issues for review.  In issues one through three appellants
directly challenge the trial court=s order dismissing their counterclaim
with prejudice.  In issues four through
six, they argue the merits of their takings claims under the state
constitution.  In issues seven through
nine, they argue the merits under the federal constitution.  Before addressing appellants= issues, we set forth the principles
guiding the trial court=s action and our review.

Plea to the Jurisdiction: 
Standard of Review and Legal Principles 

The State=s motion to dismiss in this case is the functional equivalent
of a plea to the jurisdiction.  See
Michol O=Connor, et
al., O’connor’s Texas Rules Civil Trials ' 2.1 at 171 (2001).  We review a trial court=s ruling on a plea to the
jurisdiction under a de novo standard of review.  Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998); University of Houston v. Elthon, 9 S.W.3d
351, 355 (Tex. App.CHouston [14th Dist.] 1999, pet. dism=d w.o.j.).








A plea to the jurisdiction is a dilatory plea intended to
defeat a cause of action without regard to the merits of the asserted
claims.  See Bland I.S.D. v. Blue,
34 S.W.3d 547, 554 (Tex. 2000).  In a
plea to the jurisdiction, a defendant contends that, even if all the
allegations in a plaintiff=s pleadings are true, there is an incurable jurisdictional
defect preventing the court from hearing the case on the merits.  State v. Sledge, 36 S.W.3d 152, 155
(Tex. App.CHouston [1st Dist.] 2000, pet.
denied); see City of Houston v. Lazell‑Mosier, 5 S.W.3d 887, 889
(Tex. App.CHouston [14th Dist.] 1999, no
pet.).  Although the underlying claims
may form the context in which a party raises a plea to the jurisdiction, the
court should decide the plea without delving into the merits of the case.  Bland I.S.D., 34 S.W.3d at 554.

The plaintiff has the burden to plead facts affirmatively
showing the trial court has jurisdiction. 
See Texas Ass=n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993).  In deciding a plea to the
jurisdiction, a court is to construe these factual allegations in favor of the
plaintiff and looks to the pleader=s intent.  Id. 
Accordingly, a trial court must accept the allegations in the petition
as true unless the defendant pleads and proves that the plaintiff fraudulently
made the allegations to confer jurisdiction. 
See Elthon, 9 S.W.3d at 355B56.

To determine whether jurisdiction exists, a court need not
look solely at the pleadings, but may also consider evidence to prove the
jurisdictional issues raised.  Bland
I.S.D., 34 S.W.3d at 555.  
Nevertheless, the court should confine itself to the evidence relevant
to the jurisdictional issues.  Id.








A trial court may grant a plea to the jurisdiction only if
the pleading, even after amendment, does not state a cause of action upon which
to invoke the trial court=s jurisdiction.  See
Bybee v. Fireman=s Fund Ins. Co., 160 Tex. 429, 331 S.W.2d 910, 917 (1960).  Thus, if a plaintiff=s pleadings are insufficient to
demonstrate, but do not affirmatively negate jurisdiction, the proper remedy is
to allow the plaintiff an opportunity to amend before dismissing.  City of Austin v. L.S. Ranch, Ltd.,
970 S.W.2d 750, 753 (Tex. App.CAustin 1998, no pet.) (citing Texas Ass=n of Business, 852 S.W.2d at 446; Peek v.
Equipment Serv. Co., 779 S.W.2d 802, 805 (Tex. 1989)).  If, however, a party pleads facts that
affirmatively demonstrate an absence of jurisdiction, such a defect is
incurable, and immediate dismissal of the case is proper.  L.S. Ranch, 970 S.W.2d at 753 (citing Peek,
779 S.W.2d at 804; City of Garland v. Louton, 691 S.W.2d 603, 605 (Tex.
1985)).  Similarly, a plaintiff=s argument it should be given an
opportunity to amend is not persuasive when, as in sovereign immunity cases, the
lack of subject‑matter jurisdiction can be cured only by the opposing
party=s consent to be sued.  See Liberty Mut. Ins. Co. v. Sharp,
874 S.W.2d 736, 739 (Tex. App.CAustin 1994, writ denied) (affirming dismissal with prejudice
in governmental immunity case).

Inverse Condemnation Claims and Sovereign Immunity

Condemnation is the procedure by which a sovereign state
exercises its right to take private property for public use, without consent,
but on payment of just compensation.  A.C.
Aukerman Co. v. State, 902 S.W.2d 576, 577 (Tex. App.CHouston [1st Dist.] 1995, writ
denied); State v. Westgate, Ltd., 798 S.W.2d 903, 906 (Tex. App.CAustin 1990), aff=d and remanded, 843 S.W.2d 448 (Tex. 1992); Hubler
v. City of Corpus Christi, 564 S.W.2d 816, 820 (Tex. Civ. App.CCorpus Christi 1978, writ ref=d n.r.e.).  An action for inverse condemnation is the
appropriate avenue of relief for a property owner whose property has been taken
for public use without due process or without institution of proper
condemnation proceedings, and who wishes to recover compensation for that
loss.  City of Abilene v. Burk Royalty
Co., 470 S.W.2d 643, 646 (Tex. 1971); Westgate, 798 S.W.2d at 906; Hubler,
564 S.W.2d at 820.  By definition,
therefore, a property owner cannot have a valid inverse condemnation claim if
the property at issue is the subject of a properly brought condemnation or
eminent domain action.[5]








The State does not have sovereign immunity from a valid
inverse condemnation claim. See Steele v. City of Houston, 603 S.W.2d
786, 791 (Tex. 1980) (holding governmental immunity did not shield city from
claim under article I, section 17 of the Texas Constitution); State v.
Biggar, 848 S.W.2d 291, 294‑95 (Tex. App.CAustin 1993) (same), aff=d, 873 S.W.2d 11 (Tex. 1994).  When, however, a plaintiff does not allege a
valid inverse condemnation claim, sovereign immunity does apply, and a court
should grant the plea to the jurisdiction. 
See e.g., TRST Corpus, Inc. v. Fin. Ctr., 9 S.W.3d 316,
323 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied) (holding sovereign immunity barred “taking” cause of action when
plaintiff failed to allege State intentionally performed acts resulting in
taking; reversing trial court=s order denying plea to jurisdiction); Green Int=l, Inc., v. State, 877 S.W.2d 428, 435B36 (Tex. App.CAustin 1994, writ dism=d) (upholding grant of plea to the
jurisdiction when facts alleged by plaintiff showed State had no intent to take
property in question for use under its power of eminent domain).

In summary, if appellants= pleadings demonstrate their “inverse
condemnation” claim covers either the identical property the State seeks to
condemn in eminent domain proceedings or an interest not recognized as separate
from that property for condemnation purposes, appellants have no valid inverse
condemnation claim.  Under such
circumstances, sovereign immunity bars appellants= suit, and dismissal with prejudice
is appropriate. With these principles in mind, we turn to appellants= issues.




Appellants= Issues One through Three

Issue one: whether the trial court
erred in dismissing appellants= counterclaim with prejudice.  In issue one, appellants contend the trial court erred in
dismissing their counterclaim with prejudice. Appellants, however, distinguish
between pleas to the jurisdiction based on sovereign immunity and other pleas
to the jurisdiction.  They observe
dismissal with prejudice is appropriate when the plea to the
jurisdiction is based on sovereign immunity. 
In this context, appellants cite Liberty Mutual, in which the
court upheld a dismissal with prejudice based on sovereign immunity because, in
that case, there was nothing the plaintiff could have included in its petition
that would have conferred jurisdiction.  See
874 S.W.2d at 839.  As discussed in issues
two and three below, there is nothing appellants could have added to their
petition that would have conferred jurisdiction; instead, their petition
affirmatively showed lack of jurisdiction.

We overrule issue one.








Issue two: whether the trial court
erred in not allowing them time to amend their petition. 
In issue two, appellants contend they should have been permitted to
amend the petition to allege taking of the improvements.  Appellants point to no other amendment that
would have conferred jurisdiction, and there is nothing in the record to
indicate appellants ever sought leave to amend their petition.[6]  The improvements, “if any,” were included in
the State=s petition for condemnation, and the
Trustee was named as a party to the condemnation action.[7]  An action for inverse condemnation of the
improvements would have been duplicative of the State=s condemnation action and therefore
would not comprise a valid inverse condemnation.  Adding the improvements would not have
conferred jurisdiction.

We overrule appellants= issue two.








Issue three:  whether the trial court erred in concluding it
did not have subject matter jurisdiction over appellants “inverse condemnation”
claims and therefore erred in granting the motion to dismiss. 
Texas Government Code section 25.1032(c) provides in relevant part:  “A county civil court at law has exclusive
jurisdiction in Harris County of eminent domain proceedings, both statutory and
inverse, regardless of the amount in controversy.”  Tex.
Gov=t Code Ann. ' 25.1032(c) (Vernon Supp. 2002).[8]  In issue three, appellants contend, because
the county civil court at law has exclusive jurisdiction over “inverse” eminent
domain proceedings, ipso facto, the count civil court at law had
jurisdiction over their action.  This
argument assumes appellants had a valid inverse condemnation claim that was not
duplicative of the State=s whole taking of the tract.

Here, then, we reach the principal issue in this appeal.  To analyze issue three, we turn to the nature
of appellants= condemnation action in relation to
(1) the State=s condemnation action, (2) the nature
of the remaining property interest appellants were asserting, and (3) state and
federal takings law.

In its condemnation action, the State was seeking a whole
taking of a tract of land subject to liens held by the Trust securing two
purchase-money mortgages.  In the context
of a whole taking, the total value of the property cannot be more than the
market value of the property as if it were owned by only one entity.  See Tex.
Prop. Code Ann. ' 21.042(b) (Vernon Supp. 2002) (providing, if entire tract or
parcel of real property is condemned, damage to property owner is local market
value of property at time of special commissioners= hearing); Urban Renewal Agency v.
Trammel, 407 S.W.2d 773, 774 (Tex. 1966) (stating, when property sought to
be acquired in condemnation proceeding is subject to a lease, fact‑finder
first determines market value of the entire property as if it belonged to one
person; fact‑finder then apportions market value between fee owner and
other parties having interest in the property); Zinsmeyer v. State, 646
S.W.2d 626, 628 (Tex. App.CSan Antonio 1983, no writ) (applying same rule to easement
ownership).

Simply stated, a note secured by a mortgage on a condemned
tract of land is not awarded a value in the threshold determination of “market
value.”  As explained in Nichols on
Eminent Domain:

The duty of the public to make payment for the
property which it has taken is not affected by the nature of the title or by
the diversity of interests in the property. 
The public pays what the land is worth, and the amount so paid is to be
divided among the various claimants, according to the nature of their
respective estates.

 

4 Julius L. Sackman, Nichols on
Eminent Domain, ' 14A.04(1) (rev. 3d ed. 1989).








Appellants, however, seek to recover the full amount of the
outstanding debt in the event the award is less than the outstanding debt.  Under appellants= approach, the State, in the context
of a taking, would become the insurer of all purchase-money mortgages,
regardless of whether the mortgage bears a reasonable relationship to the
market value of the property.  Appellants
cite no authority under the takings clause of either the state or the federal
constitution that warrants such a proposition.[9]

To argue that the State should be liable for the amount by
which the note exceeds the condemnation award (i.e., the market value as found
by the jury), appellants cite Williams v. State, 177 S.W.2d 106 (Tex.
Civ. App.CWaco 1943, writ ref=d). 
Williams, however, does not support appellants= argument.  Williams is distinguishable, and the
language on which appellants rely is dictum.

In 1924, Williams= son sold a tract of land to two
other persons, taking back cash and five notes, one of which was for
$10,000.  Id. at 107.  The purchasers were to subdivide the property
into blocks and lots for sale to the public. 
During the latter part of 1925, the State began constructing a highway
across a corner of one of the blocks.  Id.

In September 1925, the son died testate, naming his wife and
mother as the only devisees.  Under the
terms of an agreement settling the estate, Williams received the unpaid $10,000
note.  Id.  On January 5, 1935, the then owners of the
remaining portions of the tract conveyed a part of the property to Williams for
$10.00 consideration and “cancellation of the original executory contract.”  Id. at 107B08.








In 1937, Williams received legislative authority to sue the
State.  Id. at 107.  The case was tried to a jury, which found the
value of the strip taken for highway purposes was $500 at the time it was
taken, the damage to the remainder was $500, and the amount due Williams on her
note was $179.16 in excess of the market value of the land conveyed to her.  Id. at 108.  Williams moved for judgment in her favor for
$1000, but the trial court overruled her motion and rendered judgment Williams
take nothing.  Id.

The court of appeals affirmed, stating:

While plaintiff [Williams] became the equitable holder
and owner of the $10,000 note under the settlement agreement and order of the
Probate Court of Harris County approving same, we do not think, under the
undisputed evidence in this case, her ownership of the note, without an
assignment or transfer in writing of the superior title, gave her such interest
in the land as to enable her to rescind the original deed of conveyance from
Rush Williams to Laswell and Harbin and thereby recover the legal title to the
land therein conveyed.  Her remedy for
default in the payment of her note was restricted, under the circumstances, to
a suit upon the note with a judicial foreclosure of the lien securing payment
thereof.  Having renewed and extended the
indebtedness and lien on December 29, 1931, and having accepted the deed dated
January 5, 1935, in cancellation of the indebtedness evidenced by her note with
knowledge as to the location and maintenance of Highway No. 6, we are of the
opinion that plaintiff was not thereafter entitled to assert any cause of
action against defendants [the State and the Highway Commission] for the
damages herein sought because her claim for such damages, if any she ever had,
was satisfied and discharged by the acquisition of the land thus conveyed to
her, regardless of the value of the land conveyed or the amount of the debt
thereby extinguished.  In any event, the
maximum amount of plaintiff=s recovery, under the findings of the jury, would have
been the sum of $179.16.  She did not ask
judgment in her favor for that amount.

 

Id. at 109
(citations omitted).[10]








The State had granted Williams the right to sue, but she
ultimately received nothing; that is, she was not awarded for her note any
amount in excess of the market value of the land.  The statement in Williams on which
appellants rely (that plaintiff=s recovery would have been $179.16, an amount exceeding market
value) is dictum.  Williams
does not support the contention that a holder of a note, secured by a lien on a
condemned tract, may recover an amount in addition to the amount ultimately
awarded for taking of the whole tract of land.

We overrule appellants= issue three.

Appellants= Issues Four through Nine

We have reviewed appellants= issues four through nine in the
context of reviewing the trial court=s ruling on appellants= plea to the jurisdiction and
conclude, in those issues, appellants have not set forth any rationale on which
they could sustain an inverse condemnation claim under the facts of this
case.  Accordingly, in this context, we
overrule appellants= issues four through nine.




CONCLUSION

Appellants have offered no suggestion of how they might amend
their claim to avoid sovereign immunity. 
We affirm the order of the trial court dismissing appellants= amended counterclaim with prejudice.

 

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Opinion filed December 12, 2002.

Panel consists of
Justices Yates, Anderson, and Hudson.

Publish C Tex.
R. App. P. 47.3(b).











[1]   Appellant
Rosalie Dahl sued as beneficiary of the Trust, and as next friend of Tina Dahl
and Todd Dahl (minor children and beneficiaries of the Trust).





[2]  A
party may appeal from an interlocutory order of a county court at law that Agrants
or denies a plea to the jurisdiction by a governmental unit as that term is
defined in Section 101.001.@  Tex.
Civ. Prac. & Rem. Code Ann. '
51.014(a)(8) (Vernon Supp. 2002).





[3]  Presumably
this award was based on local market value. 
See Tex. Prop. Code Ann.
' 21.042(b) (Vernon Supp. 2002) (referring to damages
when entire tract or parcel is condemned).





[4]  In August,
2002, the State=s statutory eminent domain action proceeded to jury
trial on condemnation damages.  The jury
found the market value of the tract to be $502,941.00. 





[5]  AThe process of exercising the power of eminent domain
is commonly referred to as >condemnation= or >expropriation.=@  Black=s Law Dictionary 523 (6th ed. 1990).





[6]  Appellants
responded to the motion to dismiss, but did not raise the issue of the
improvements in their response.  Neither
did they seek leave to amend.  Arguably,
they have waived the claim the trial court erred in not allowing them time to
amend.  See Kassen v. Hatley, 887
S.W.2d 4, 13‑14 n.10 (Tex. 1994) (stating defendant should have pursued
sovereign immunity attack by special exception rather than by motion for
summary judgment, but because the plaintiffs did not present an objection to
trial court or request opportunity to amend petition in wake of summary
judgment, they waived complaint); Higbie Roth Constr. Co. v. Houston Shell
& Concrete, 1 S.W.3d 808, 811 (Tex. App.CHouston
[1st Dist.] 1999, pet. denied) (citing Kassen and holding appellant, by
not requesting opportunity to amend pleadings, waived reliance on complaint
premised on absence of special exceptions).





[7]  Appellants, as
individuals and beneficiaries of the Trust, do not contend their interests
differed from those of the Trustee.  By
the terms of the Trust, the Trustee had the power to commence or defend any
litigation with respect to the Trust or Trust property.  It was therefore not necessary for the State
to name the individual beneficiaries.  See
Citizens State Bank of Dickinson v. Bowles, 663 S.W.2d 845, 848 (Tex. App.CHouston [14th Dist.] 1983, writ dism=d).





[8]  Exclusive
jurisdiction is the power a court exercises over an action or person to the
exclusion of all other courts.  See
Black=s Law Dictionary 564 (6th ed.
1990).





[9]  The Texas
Constitution provides in relevant part: ANo
person=s property shall be taken, damaged or destroyed for or
applied to public use without adequate compensation being made, unless by the
consent of such person; and, when taken, except for the use of the State, such
compensation shall be first made, or secured by a deposit of money.@  Tex. Const. art. I, ' 17.  The United
States Constitution provides in relevant part: A[N]or
shall private property be taken for public use without just compensation.@  U.S. Const. amend. V.  The Takings Clause of the Fifth Amendment is
applicable to the States through the Fourteenth Amendment.  See Palazzolo v. Rhode Island, 121 S.
Ct. 2448, 2457 (2001).





[10]  The Williams
court cited two cases in support of its conclusion Williams= maximum recovery would be $179.16: Carroll v.
Edmondson, 41 S.W.2d 64 (Tex. Comm=n App.
1931, judgm=t adopted), and American National Insurance Co. v.
City of Port Arthur, 62 S.W.2d 256 (Tex. Civ. App.CBeaumont 1933, no writ).  Only the latter was a condemnation case.  It involved taking of an easement and the
appellate court held there was no damage to the security.